No. 04-98-00156-CV



MAGNOLIA GAS COMPANY & MKP Production Company,


Appellants



v.



KNIGHT EQUIPMENT & MANUFACTURING CORPORATION,


Appellee



From the 218th Judicial District Court, Atascosa County, Texas


Trial Court No. 97-09-0572-CVA


Honorable Olin B. Strauss, Judge Presiding



Opinion by: Paul W. Green, Justice

Dissenting opinion by: Phil Hardberger, Chief Justice


Sitting: Phil Hardberger, Chief Justice

 Paul W. Green, Justice

 Sarah B. Duncan, Justice


Delivered and Filed: September 23, 1998


REVERSED AND DISMISSED


 This accelerated appeal arises from the trial court's denial of the special appearances
of Magnolia Gas Company and MKP Production Company. See Tex. Civ. Prac. & Rem.
Code Ann. § 51.014(a)(7) (Vernon Supp. 1998). Because we hold the trial court lacked
jurisdiction over Magnolia and MKP, we reverse its order and dismiss the case against them.

Factual and Procedural Background

 Knight Equipment & Manufacturing Corporation (KEMCO) sued Magnolia and MKP
in Atascosa County for breach of contract, in quantum meruit, on sworn account, and for
civil conspiracy and fraud. KEMCO is a Texas corporation with its principal office in
Jourdanton, Texas. Both Magnolia and MKP are nonresidents of Texas.

 KEMCO owned a cryogenic gas processing plant in Kellyville, Oklahoma. In
February 1996, KEMCO contracted with M&M Gathering, LLC to dismantle that plant and
to refurbish, transport, and install it at M&M Gathering's plant in McKamie, Arkansas.(1)
M&M Gathering subsequently assigned its rights and obligations under this contract to
Magnolia and MKP in September 1996.(2) The assignment was negotiated in Oklahoma,
where it was ultimately executed. The contract is entitled "Agreement for Movement,
Refurbishment and Installation of Cryogenic Gas Plant Facility" and is simple in concept:

 WHEREAS, [Magnolia's and MKP's assignor] desires to have installed at its
McKamie Plant location in Lafayette County, Arkansas, a Cryogenic Gas Plant
and related treating facilities to allow recovery of gas liquids and removal of
inerts; and


 WHEREAS, [KEMCO] has in its inventory the Cryogenic Gas Plant known
as [the] Kellyville plant near Kellyville, Oklahoma, and desires to engineer,
refurbish, and install said plant and related treating facilities at the McKamie
location for [Magnolia's and MKP's assignor];


NOW, THEREFORE, IT IS MUTUALLY AGREED, AS FOLLOWS:



ARTICLE 1 - SCOPE OF WORK



 [KEMCO] shall furnish materials and supplies, and shall design, fabricate,
recondition, modify, transport and assist in start-up of a Cryogenic Gas Plant
and related treating facilities at [Magnolia's and MKP's assignor's] McKamie,
Arkansas location, in accordance with the Exhibits which are attached hereto
and made a part hereof. . . .


 The heart of the jurisdictional dispute in this case arises out of a brief description
under the first of twelve items listed to be performed by KEMCO, the contractor, under the
"project scope" exhibit attached to the contract, which says KEMCO agreed to "dismantle,
remove, and transport all Kellyville equipment to contractor's yard. . . ." KEMCO says it
informed Magnolia and MKP that its yard was in Jourdanton, Texas, and therefore Magnolia
and MKP knew at least a portion of the contract would be performed in Texas. The affidavit
of Deral Knight, chief executive officer of KEMCO, states that the Jourdanton plant
performs the refurbishing work under its contracts, and that Magnolia and MKP knew this
because they were given copies of the KEMCO brochure which includes this information.
KEMCO further asserts that Magnolia and MKP, exercising due diligence prior to the
contract's assignment, acquired knowledge that a portion of the contract was to be performed
in Texas. KEMCO estimates its performance in Texas comprised eighty percent of the
engineering and refurbishment called for by the contract--"the majority of the work
contemplated by any party." Magnolia and MKP contend neither they, nor the contract
assigned to them, required performance in Texas. George N. Keeney, III, vice president of
Okland Oil Company, the managing member of MKP, admitted in his deposition, however,
that he knew some of the work under the contract would be performed in Texas and that
some of the materials for the Arkansas plant would also originate there.

 The remaining record evidence of activities undertaken by Magnolia and MKP in
Texas involves the parties' course of dealing after the contract assignment. First, Magnolia
and MKP remitted payment to KEMCO's bank account in Texas. Second, James Moore, an
engineer for the Arkansas plant and Magnolia and MKP's designated representative for the
project, lived in Texarkana, Texas during the plant's installation. By affidavit, Moore stated
that M&M Gas moved its principal place of business to Texarkana, Texas in March 1997,
and that Magnolia and MKP reimbursed him for his expenses while residing in Texarkana.
Magnolia and MKP assert they did not direct Moore to live in Texas and hypothesize that
either Moore chose to live there or did so at M&M Gas' direction. Finally, Magnolia and
MKP hired an engineering consultant from Richardson, Texas to evaluate the Arkansas
project.

 Additional activity taking place in Texas transpired once performance under the
agreement was questioned. For example, Magnolia and MKP attended a meeting at the
Jourdanton plant to discuss conflict over the second set of change orders. Magnolia and
MKP contend that KEMCO insisted they travel to Texas for the meeting. Furthermore, the
parties met in the Dallas office of Energy Income Fund, the project's lender, to review
performance under the agreement. Although the lender's principal office was in
Massachusetts, the meeting was held in Dallas at its request.

 According to George Keeney's affidavit, disputes between the parties arose in spring
1997. Complaints about KEMCO's performance included inferior quality and workmanship;
untimeliness; the propriety, approval, and amount of KEMCO's change orders;(3) failure to
pay third-party vendors, suppliers, and laborers; failure to keep the plant free of
encumbrances; a stated intent to cease work; and failure to address other deficiencies
identified by Magnolia. On September 26, 1997, Magnolia and MKP filed a declaratory
judgment action against KEMCO in an Arkansas federal court. The parties dispute whether
KEMCO received notice of the filing. On September 30, 1997, KEMCO filed the suit in
Atascosa County from which this appeal arises.

 On November 26, 1997, Liberty Supply, Inc. filed suit in Arkansas state court against
KEMCO to recover for materials and supplies it provided to KEMCO for use in KEMCO's
contract with Magnolia and MKP. On January 26, 1998, the same day the Atascosa court
held its hearing on the special appearances at issue in this appeal, KEMCO filed an amended
original answer and a third-party claim against Magnolia and MKP, alleging Magnolia and
MKP breached the contract underlying this appeal.(4)

Standard and Scope of Review

 In a special appearance, the nonresident defendant bears the burden of negating all
bases of personal jurisdiction. Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203
(Tex. 1985). The parties to this appeal maintain we review the evidence for factual
sufficiency while we review legal conclusions de novo. See Nikolai v. Strate, 922 S.W.2d
229, 236 (Tex. App.--Fort Worth 1996, writ denied). Although we agree that we review the
lower court's legal conclusions de novo, we disagree that we review the record of an
interlocutory appeal for factual sufficiency of the evidence.

 Trial court decisions derived from both factual determinations and legal conclusions
are generally reviewed for an abuse of discretion. Pony Express Courier Corp. v. Morris,
921 S.W.2d 817, 820 (Tex. App.--San Antonio 1996, no writ). Personal jurisdiction
involves questions of law and fact. See Guardian Royal Exch. Assurance, Ltd. v. English
China Clays, P.L.C., 815 S.W.2d 223, 230-31 (Texas 1991). Thus, the abuse of discretion
standard is more appropriate than factual sufficiency review, at least in the interlocutory
setting.(5)

 Under the abuse of discretion standard, we may not substitute our judgment for that
of the trial court regarding its resolution of factual issues, and we cannot disturb its decision
absent a showing of arbitrariness or unreasonableness. See Walker v. Packer, 827 S.W.2d
833, 839-40 (Tex. 1992). Magnolia and MKP must therefore establish that the trial court
could reasonably have reached only one conclusion. See id. Where controlling legal
principles are concerned, we exercise less deference and examine whether the trial court
analyzed and applied the law correctly. Id. The trial court abuses its discretion when in
misapplies the law. See Landon v. Jean-Paul Budinger, Inc., 724 S.W.2d 931, 935 (Tex.
App.--Austin 1987, no writ). If legally correct, its ruling is immune from appellate revision.
Id. at 936.

 Although Magnolia and MKP requested findings of fact and conclusions of law, the
trial court entered none. Therefore, all questions of fact are presumed to support the
judgment. See Zac Smith & Co. v. Otis Elevator Co., 734 S.W.2d 662, 666 (Tex. 1987);
Hawsey v. Louisiana Dep't of Soc. Svcs, 934 S.W.2d 723, 725 (Tex. App.--Houston [1st
Dist.] 1996, writ denied). Because the appellate record contains a reporter's record, however,
these findings of fact are inconclusive. See Zac Smith, 734 S.W.2d at 666.

Jurisdiction

 A nonresident defendant need not defend itself in a Texas court unless the exercise
of jurisdiction over that party comports with both (1) the Texas long-arm statute, and (2) state
and federal constitutional guarantees of due process. Guardian Royal Exch., 815 S.W.2d at
226. The Texas long-arm statute permits the exercise of jurisdiction over nonresidents
"doing business" in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997).
Although the statute enumerates certain acts which constitute "doing business," it
contemplates that a nonresident's "other acts" may satisfy the "doing business" requirement.
See Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990).

 The Texas Supreme Court has interpreted the statute's language broadly: jurisdiction
over nonresident defendants is limited only by the federal constitutional requirements of due
process. See Guardian Royal Exch., 815 S.W.2d at 226; Schlobohm, 784 S.W.2d at 357.
Accordingly, we must determine whether the trial court's exercise of jurisdiction over
Magnolia and MKP survives a federal due process challenge, which involves a two-fold
inquiry: (1) the defendants must have purposely established minimum contacts with the
forum state; and (2) the exercise of jurisdiction must comport with "fair play and substantial
justice." See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985).

1. Minimum Contacts

 Under the first part of the due process analysis, we consider whether the defendants
purposefully availed themselves of the privilege of conducting activities within the forum
state, thus enjoying the benefits and protections of its laws. Burger King, 471 U.S. at 474-75.
Our focus is on the defendants' intentional activities and expectations. In sum, for a Texas
court to assert personal jurisdiction over them, the defendants' activities "must justify a
conclusion that the defendant[s] should reasonably anticipate being called into court" here.
Id.; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

 Personal jurisdiction is divided into two categories: specific and general. See
Schlobohm, 784 S.W.2d at 357. KEMCO argues that Magnolia and MKP had sufficient
minimum contacts with Texas, without attributing those contacts to either general or specific
jurisdiction. Therefore, we consider both.

 a. General Jurisdiction

 General jurisdiction is appropriate where continuous and systematic contacts tie the
defendants to the forum state. Guardian Royal Exch., 815 S.W.2d at 230. In deciding
questions of general jurisdiction, we require a demonstration of substantial activities in the
forum state. Schlobohm, 784 S.W.2d at 357.

 KEMCO may not command the presence of Magnolia and MKP on the basis of
general jurisdiction. Both Magnolia and MKP conduct the majority of their business within
the state of Arkansas. They claim never to have sent goods into Texas, nor performed
services in Texas. They further point out they have never owned any property in Texas, have
never employed any people in Texas, nor sent any of their employees to Texas while working
for them.

 KEMCO presents little evidence to the contrary. In support of its position that
Magnolia and MKP maintained ongoing, systematic contacts with Texas, KEMCO relies on
the alleged partial performance of the contract in Texas, the residence of the representative
in Texas that was reimbursed by Magnolia and MKP, the relocation of M&M Gas' principal
place of business to Texarkana, the wiring of payments into Texas, and the two meetings that
transpired in Texas.

 The acts of Magnolia and MKP cited by KEMCO do not amount to ongoing and
systematic contacts. Rather, Magnolia and MKP's connection to Texas implicates a single,
albeit extended, business transaction. Accordingly, a ruling that Magnolia and MKP had
sufficient minimum contacts to trigger general jurisdiction would be an abuse of discretion.

 b. Specific Jurisdiction

 We now consider whether the exercise of specific jurisdiction over Magnolia and
MKP would be proper. Specific jurisdiction pertains to causes of action arising out of or
relating to the defendants' contacts with Texas. Guardian Royal Exch., 815 S.W.2d at 230.
We therefore focus on the relationship among the defendants, the forum, and the litigation.
Schlobohm, 784 S.W.2d at 357. Magnolia and MKP emphasize that specific jurisdiction
arises only when the plaintiff's cause of action emanates from the nonresident's
contact--rather than a third party's unilateral acts--with the forum state. In support, they
cite KEMCO's alleged unilateral decision to refurbish components in Texas as well as the
meetings attended in Texas necessitated by KEMCO's alleged failure to meet contract
specifications. They maintain that neither entering into a contract with a Texas corporation
nor sending payment to Texas make them susceptible to suit here. Magnolia and MKP
further emphasize that as assignees, they did not engage in any activities related to Texas that
may have transpired during contract negotiation. Finally, MKP and Magnolia reason that
because they already paid KEMCO for the work it performed at the Jourdanton yard,
KEMCO's suit against them could not possibly implicate the work done in Texas.
Responding, KEMCO relies on the alleged partial performance of the contract in Texas,
reimbursement by Magnolia and MKP of the living expenses of the designated representative
who lived in Texas, the relocation of M&M Gas's principal place of business to Texarkana,
the wiring of payments into Texas, and the two meetings that transpired in Texas.

 Magnolia and MKP's emphasis on their own conduct is correct. See Helicopteros
Nacionales de Colombia v. Hall, 466 U.S. 408, 417 (1984); Guardian Royal Exch., 815
S.W.2d at 227. Merely contracting with a Texas corporation does not satisfy the minimum
contacts requirement. See Burger King, 471 U.S. at 478; Temperature Sys., Inc. v. Bill
Pepper, Inc., 854 S.W.2d 669, 675 (Tex. App.--Dallas 1993, writ dis'd agr.). Furthermore,
payments sent to the forum state are not determinative. See Temperature Sys., 854 S.W.2d
at 675; cf. Bissbort v. Wright Printing & Publ'g Co., 801 S.W.2d 588, 589 (Tex. App.--Fort
Worth 1991, no writ) (holding payments made in Texas satisfied minimum contacts where
contract required it and litigation was about nonpayment). Similarly, minimum contacts may
not be satisfied by merely engaging in communications with a Texas corporation during
performance of the contract. See Gundle Lining Constr. Corp. v. Adams County Asphalt,
Inc., 85 F.3d 201, 205-08 (5th Cir. 1996).(6)

 Because these actions alone are not enough to compel Magnolia and MKP's
appearance in a Texas court, KEMCO's partial performance of the contract in Texas is
significant. See Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc., 835 S.W.2d 645, 650 (Tex.
App.--Houston [14th Dist.] 1992, no writ) (recognizing the focus is on quality and nature,
not quantity, of contacts). In particular, we focus on the refurbishment work because merely
supplying materials from the Jourdanton plant would be a unilateral act on KEMCO's part.

 Magnolia and MKP neither required nor bargained for the refurbishing work to be
completed in Texas. Cf. Fish v. Tandy, 948 S.W.2d 886, 894 (Tex. App.--Fort Worth 1997,
writ denied) (finding minimum contacts where defendant negotiated and contracted with
Texas corporation through three personal trips, phone calls, and faxes to Texas); Bissbort,
801 S.W.2d at 589 (finding minimum contacts where defendant contacted Texas customer,
contract required performance payment in Texas, and dispute involved nonpayment).
Instead, as the contract assignees, Magnolia and MKP simply agreed to pay KEMCO to
refurbish and relocate KEMCO's cryogenic gas plant to Arkansas and KEMCO agreed to do
whatever was necessary to carry out the contract.

 Indisputably, KEMCO is a Texas corporation with a refurbishing facility in Texas;
Magnolia's and MKP's assignor, Magnolia, and MKP are all Oklahoma entities whose
principal offices are located in Oklahoma; and the plant was to be constructed in Arkansas.
As a result of this geographic diversity, it is certainly not beyond contemplation either that
some part of KEMCO's performance (e.g., refurbishing) and some part of Magnolia's and
MKP's performance (e.g., payment) might take place in Texas, or that the contracting parties
were aware of this possibility at the time they entered the contract. For purposes of our
review, we assume the trial court found this fact in support of its order--that is, at the time
the contract was entered, both parties contemplated that some part of each party's
performance would occur in Texas. This conclusion is inherent in the abuse of discretion
standard of review.

 But partial performance of a contract in Texas is not the sine qua non of personal
jurisdiction. Rather, the dispositive question is one of law: are the defendant's contacts of
a sufficient nature and quality that the exercise of personal jurisdiction comports with "fair
play and substantial justice?" Burger King, 471 U.S. at 475-76; cf. Ornelas v. United States,
517 U.S. 690, 698-99 (1996) (explaining that appellate courts review a trial court's resolution
of legal questions de novo, including its applying the law to the facts, but review a trial
court's fact findings deferentially). We review conclusions of law de novo. E.g. Walker v.
Packer, 827 S.W.2d at 840.

 We conclude that Magnolia and MKP did not purposefully avail themselves of the
benefits and protections of Texas law when they assumed the contract with KEMCO. The
Texas contacts were entirely incidental and immaterial to the purpose of the contract and
were not instigated by Magnolia and MKP, or their assignor. Thus, in the absence of facts
amounting to minimum contacts, we hold the trial court abused its discretion by concluding
it had personal jurisdiction over Magnolia and MKP.

2. Fair Play and Substantial Justice

 We also hold that the assertion of personal jurisdiction over Magnolia and MKP
would offend traditional notions of fair play and substantial justice. To avoid being haled
into a foreign court, the defendants must present "a compelling case that the presence of
some consideration would render jurisdiction unreasonable." See Burger King, 471 U.S. at
477. In this inquiry, we consider the following factors, where appropriate: (1) the burden
on the defendants; (2) the interests of the forum state in adjudicating the dispute; (3) the
plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial
system's interest in obtaining the most efficient resolution of controversies; and (5) the
shared interest of the several states in furthering fundamental social policies. Id.; Guardian
Royal Exch., 815 S.W.2d at 231. When the defendant has established minimum contacts
with the forum state, the exercise of jurisdiction rarely fails the test of fair play and
substantial justice. See Guardian Royal Exch., 815 S.W.2d at 231.

 Magnolia and MKP's burden of litigating in Texas appears considerable. Their gas
processing facilities and offices, as well as the majority of related documents and witnesses,
are located in Arkansas. Liens filed against the plant were filed in Arkansas, and the
suppliers of plant materials, who have not been paid by KEMCO, are located in Arkansas.
KEMCO contends that litigation in Arkansas would be burdensome to Magnolia and MKP
given they are entities formed and located in Oklahoma. In light of the fact that Magnolia
and MKP have already engaged in operations in Arkansas, litigating there would be less
burdensome than in Atascosa County, Texas.

 Texas' interest in being the forum state is tenuous. As a general proposition, Texas
has an interest in providing its citizens with a forum for convenient and effective relief from
breached contracts, fraudulent conduct, and conspiracies. However, KEMCO's ability to
obtain convenient relief in its home state is weakened by the lawsuits, involving the same
contract at issue here, that KEMCO must defend in Arkansas. At the time KEMCO filed
suit, Magnolia and MKP had already paid approximately $3.7 million to KEMCO on a $3.9
million contract. The costs to KEMCO of litigating in both Texas and Arkansas could
potentially outweigh its expectation under the contract.

 Accordingly, KEMCO's interest in litigating in Texas does not weigh heavy in the
balance. Although, in the abstract, it would be convenient for KEMCO to sue Magnolia and
MKP in Texas, under this set of facts, it makes little sense. Since KEMCO filed suit in
Texas, it has also been sued in Arkansas state court by at least one of the suppliers from
whom it purchased materials; KEMCO then brought Magnolia and MKP in as third party
defendants in that lawsuit. Furthermore, KEMCO should expect to defend itself in a foreign
court because it regularly conducts business out of state.(7)

 Finally, it appears that the interstate judicial system's interest, as well as the shared
interest of the several states, would best be served by the suit proceeding in Arkansas. After
all, that is where the bulk of the contract work appears to have taken place and where the
plant will operate. In the interest of judicial economy, the disputes among all parties
involved, whether they be the parties to the contract or the suppliers engaged during
construction, would be best resolved in one proceeding.

Conclusion

 The trial court abused its discretion in ruling that Magnolia and MKP had minimum
contacts with Texas and that requiring them to defend in Texas comported with fair play and
substantial justice. We therefore reverse the trial court's order and dismiss the case against
Magnolia and MKP.


 PAUL W. GREEN

 Justice

PUBLISH

1. M&M Gathering is also a defendant in the underlying litigation, although it has not joined in this appeal. The
managing member of M&M Gathering is M&M Gas Processing, an Oklahoma corporation that was originally a member
of Magnolia and MKP.
2. Magnolia, an Oklahoma limited liability corporation, was formed to own and operate the Arkansas plant.
MKP, also an Oklahoma limited liability corporation, was formed to own and operate an oil and gas field in Arkansas.
3. According to the contract at issue, change orders are either (1) the client's requests for work done outside the
original scope of the contract, or (2) the contractor's developments in design and scope approved by the client.
4. At oral argument, KEMCO asked this Court to take judicial notice of the dismissal of the federal lawsuit.
Magnolia and MKP added that two lawsuits, in addition to the suit filed by Liberty Supply, have been filed in Arkansas
state court by KEMCO's suppliers.
5. We express no opinion about the propriety of factual sufficiency review in post-trial appeals of special
appearances. Compare NCNB Texas Nat'l Bank v. Anderson, 812 S.W.2d 441, 442-43 (Tex. App.--San Antonio 1991,
no writ) (applying factual sufficiency standard), with Thorpe v. Volkert, 882 S.W.2d 592, 596-97 (Tex. App.--Houston
[1st Dist.] 1994, no writ) (applying abuse of discretion standard). We note, however, that although the courts of appeals
label their review as one of factual sufficiency, in practice, they largely defer to the trial court's factual determinations
while ruling de novo its legal conclusions. See, e.g., MacMorran v. Wood, 960 S.W.2d 891, 894-99 (Tex. App.--El
Paso 1997, pet. denied); Nikolai, 922 S.W.2d at 238-40; Hotel Partners v. KPMG Peat Marwick, 847 S.W.2d 630, 632
(Tex. App.--Dallas 1993, writ denied).
6. Magnolia and MKP rely heavily on U-Anchor Advertising, Inc. v. Burt, 553 S.W.2d 760 (Tex. 1977), in
arguing minimum contacts may not be satisfied by a party making payments in the forum state for a contract partially
performed in the forum state. In U-Anchor, a Texas business, U-Anchor, constructed highway signs in Texas and then
installed them in Oklahoma. The Oklahoma customer remitted monthly payments to U-Anchor's office in Texas. The
Texas Supreme Court held the only activity the Oklahoma customer engaged in was the mailing of payments into Texas,
which was not enough to satisfy the due process minimum contacts requirement. This case, however, pre-dates the
bifurcated analysis of general versus specific jurisdiction. Accordingly, we cannot assign U-Anchor the weight afforded
it by Magnolia and MKP.
7. According to its brochure, KEMCO engages in projects not only in the locations involved in this suit, but also
in places as distant as Indonesia.


Return to
4th Court of Appeals Opinions