In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00029-CR


______________________________




JAMES GALEN SHAW, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 115th Judicial District Court


Upshur County, Texas


Trial Court No. 12,560




 




Before Grant, Ross, and Cornelius,* JJ.


Opinion by Justice Ross


*William J. Cornelius, C.J., Retired, Sitting by Assignment



O P I N I O N



 The jury convicted James Shaw for the murder of Carlotta Nealy and assessed
punishment at fifty years' imprisonment. Shaw brings a single point of error on appeal. He
contends the trial court erred in admitting extraneous offense testimony at the
guilt/innocence phase of his trial. 

 Nealy's death occurred sometime between March 9 and March 12, 2000. Nealy was
last seen on March 9, and her body was discovered March 12. On the same day Nealy's
body was found, law enforcement officers arrested Shaw while he was driving Nealy's
truck. Blood was visible on Shaw's clothing at the time of his arrest. Shaw did not contest
the fact that he knew Nealy or that the two had an argument shortly before Nealy's death.

 An expert testified concerning the physical evidence. That evidence showed Nealy's
blood on one of Shaw's shoes and on the clothing he was wearing at the time of his arrest. 
The bottom sole of one of his shoes was consistent with a shoe print found at the scene. 
Further, there was a broken piece of marble found at the scene with both Nealy's and
Shaw's blood on it. 

 Shaw's cellmate, Joseph Caster, testified Shaw told him he killed Nealy.

 Although Shaw did not testify at trial, he claimed to the investigating officers that he
had a loss of memory during the time of Nealy's death, and he repeatedly asserted to them
that he recalled nothing concerning her death. 

 Shaw contends the trial court committed reversible error by allowing the introduction
of extraneous offenses into evidence. Shaw contends the cumulative effect of this
evidence portrayed him as being a criminal generally, as being a drug user who committed
random thefts, and as one displaying an irrational and volatile temper. Shaw specifically
complains about the introduction of three extraneous offenses: (1) theft of a chain saw 
belonging to his father that was found in Nealy's truck, (2) burglary of a church, and (3) use
of illegal drugs. Shaw also complains of the testimony of Caster regarding Shaw's
disposition and temper.

 At the beginning of trial, Shaw filed a motion in limine to exclude the introduction of
the extraneous offenses. The trial court overruled the motion. At trial, Shaw failed to
object to the evidence regarding the chain saw and to Caster's testimony. He therefore
waived his right to complain about the admission of this evidence on appeal. Tex. R. App.
P. 33.1; Mathis v. State, 67 S.W.3d 918, 926-27 (Tex. Crim. App. 2002); Ladd v. State, 
3 S.W.3d 547, 569 (Tex. Crim. App. 1999).

 Concerning the burglary of the Glenwood Baptist Church, the evidence showed that,
when the officers arrested Shaw, they discovered a radio in Nealy's truck that had been
stolen from the church. The radio belonged to Shaw's grandmother, a member of the
church. Shaw complains the State went beyond merely proving the radio found in the truck
came from the church. He complains the State introduced details of the commission of the
burglary, including a photograph of a broken window believed to be the point of entry. 
Shaw contends that this evidence was not relevant to the murder for which he was on trial
and that the potential for prejudice wholly outweighed any probative value, even if the
evidence was relevant. 

 Shaw initially objected to the questions regarding the burglary on the basis of
relevance and as eliciting evidence concerning an extraneous offense. The trial court
overruled the objection, but granted a running objection to this line of questioning. 
However, during the testimony of the same witness who was testifying when Shaw was
granted a running objection, Shaw's counsel affirmatively stated that he had "no objection" 
to the admission of the photograph of the broken church window. 

 Texas has long held that the admission of inadmissible evidence over a valid
objection does not constitute reversible error where the "same facts" have been admitted
into evidence without objection. Fuentes v. State, 991 S.W.2d 267, 273 (Tex. Crim. App.
1999); East v. State, 702 S.W.2d 606, 611 (Tex. Crim. App. 1985); Brasfield v. State, 600
S.W.2d 288, 296 (Tex. Crim. App. 1980); Boles v. State, 598 S.W.2d 274, 279-80 (Tex.
Crim. App. [Panel Op.] 1980). "Where facts complained of are admitted without objection
by other competent evidence, no reversible error is presented." Boles, 598 S.W.2d at 279.

 Further, if an objection to evidence has been made and action has been taken that
preserves the court's erroneous ruling for appeal, but counsel says "no objection" when
that evidence is actually offered, counsel's comment constitutes a waiver of the previously
preserved error. See Boykin v. State, 504 S.W.2d 855, 857 (Tex. Crim. App. 1974); Jones
v. State, 833 S.W.2d 118, 126 (Tex. Crim. App. 1992); Dean v. State, 749 S.W.2d 80, 83
(Tex. Crim. App. 1988). 

 Shaw properly objected to the line of questioning regarding the church burglary and
obtained a running objection, preserving any error for appellate review. However, after
obtaining the running objection, Shaw took an inconsistent stance by stating he had "no
objection" to the admission of the photograph depicting the broken window of the church. 
By not qualifying his "no objection" in any way, Shaw has failed to preserve any complaint
for appeal regarding the evidence of the church burglary.

 Even if Shaw did not waive his running objection at that time, he later waived it by
failing to object to the same facts when introduced by the testimony of Othell LaFerney, 
pastor of Glenwood Baptist Church. LaFerney testified regarding the break-in at the
church and testified that a radio belonging to one of the Sunday School teachers was
stolen. Although covered by the subject matter of the running objection, Shaw did not
object to this testimony. This testimony occurred on a different day at trial and was
introduced following the testimony of thirteen intervening witnesses. 

 We recognize that a properly framed running objection can extend to testimony by
all witnesses pertaining to the same type of evidence, but such did not exist in this case. 
See Ford v. State, 919 S.W.2d 107, 113 (Tex. Crim. App. 1996); Huckaby v. A.G. Perry
& Son, Inc., 20 S.W.3d 194, 203 (Tex. App.-Texarkana 2000, pet. denied); Scaggs v.
State, 18 S.W.3d 277, 292-93 (Tex. App.-Austin 2000, pet. ref'd). Shaw did not request
the running objection. Rather, the trial court granted the running objection sua sponte "on
this line of questioning." Such running objection was not adequate to apply to all
witnesses. By failing to object when the same evidence was offered again, Shaw waived
any complaint as to the trial court's ruling. Fuentes, 991 S.W.2d at 273; Ethington v. State,
819 S.W.2d 854, 858 (Tex. Crim. App. 1991). Shaw has failed to preserve this complaint
for appeal.

 Shaw also complains about the testimony concerning his drug use. He first
complains about the testimony of an investigating officer, Roxanne Bedwell, describing
how Shaw used a beer can as a "pipe." The context of this testimony is as follows:

 Q. . . . Was there some information that you had received from
one of the jailers regarding the defendant.

 

 A. Yes.

 

 Q. As a result of receiving that information, what action did you
take?

 

 A. I spoke with the defendant in the jail and he agreed to go with
myself and Chief Deputy Jordan to two different locations that he felt may
help us in our investigation.

 

 Q. Okay. And what, if anything, did you receive from those
locations?

 

 A. I found a beer can that had been made into a pipe to smoke
marijuana . . . .

 

 . . . .

 

 Q. All right. And you indicated that you picked up a beer can; is
that correct?

 

 A. That is correct.

 

 Q. . . . [Y]ou said something about it being made into a pipe; is
that correct?

 

 A. That is correct.

 

 Q. And did that match what the defendant told you as well?

 

 A. Yes, it did.

 

 Q. Did he indicate he had used that particular item?

 

 A. Yes, he did.

 

 Q. And if you could, explain to the jury how it was made into a
pipe, if you can.


 A. It had holes punctured on the top where you would lay the
substance that you wanted to smoke and light it while you breath [sic] in
through the hole that you drink out of.


 Q. In the conversation that you had had with the defendant did he
make any indication to you that he had utilized drugs during the period of
time from March the 9th through March the 12th?


 A. Yes, he did.


 [Defense Counsel]: Your Honor, I object to that, not relevant
to the cause at bar and just too general a question.


 THE COURT: I'm going to overrule the objection.


 Q. [By Prosecuting Attorney]: What kind of drugs did he indicate
that he had used?


 A. He indicated to me that he had used alcohol, marijuana dipped
in formaldehyde, and crack cocaine.


 The specific question to which Shaw objected concerned whether Shaw told Bedwell
he used drugs between March 9 and March 12. There was no objection to the testimony
regarding the beer can that was used as a "pipe." By failing to object to the officer's
testimony regarding the "pipe," Shaw waived his right to complain on appeal about the
admission of this evidence. Tex. R. App. P. 33.1; Mathis, 67 S.W.3d at 926-27; Ladd, 3
S.W.3d at 569. 

 Shaw further contends the trial court erred in admitting the testimony of Bedwell
quoted above concerning what kind of drugs he used. Shaw argues that this evidence was
irrelevant to the crime for which he was charged and that his use of drugs was not
connected to the commission of the crime. 

 Even assuming the last objection Shaw made before this testimony was given
preserved the alleged error in the admission of this testimony, the State adduced this same
evidence without further objection during its cross-examination of Bedwell, after Shaw
called her as a witness. In order to preserve error, the objecting party must object each
time the objectionable evidence is offered. Fuentes, 991 S.W.2d at 273; Ethington, 819
S.W.2d at 858. By failing to object when the same evidence was offered again, Shaw
waived any complaint. Fuentes, 991 S.W.2d at 273; Ethington, 819 S.W.2d at 858. 


 We affirm the judgment.



 Donald R. Ross

 Justice


 

Date Submitted: May 16, 2002

Date Decided: June 12, 2002


Do Not Publish





4"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00020-CV

                                                ______________________________

 

 

                                          GLENN STELLY,
Appellant

 

                                                                V.

 

                                               GABE TARR, Appellee

 

 

                                                                                                  


 

 

                                            On Appeal from the County
Court at Law

                                                             Bowie County, Texas

                                                    Trial Court No. 10-C-0921-CCL

 

                                                            
                                      

 

 

                                            Before Carter, Moseley
and Cornelius,* JJ.

                                                        Opinion by Justice Moseley

 

 

________________________

*William J. Cornelius,
Chief Justice, Retired, Sitting by Assignment

 








                                                                   O P I N I O N

 

            Gabe
Tarr, a past director of the HRC Foundation, Inc. (Foundation),[1]
sued Glenn Stelly, the president of the Foundation, individually, for
defamation.  Tarrs suit alleged that
removal of his name as a board member for misdirect[ing] significant funds
from the Foundation served to effectively defame him and damage his
reputation.  Stelly, a Louisiana
resident, challenged the trial courts personal jurisdiction by filing a
special appearance.  He appeals the trial
courts denial of his special appearance.[2]  Because we conclude that Stelly was not
subject to in personam jurisdiction
in Texas, we reverse the trial courts judgment and render a judgment
dismissing the case for lack of personal jurisdiction. 

I.          Standard of Review 

            In
Tarrs suit against nonresident defendant Stelly, the initial burden of proof
to plead sufficient allegations to bring Stelly within the provisions of the Texas
long-arm statute was upon Tarr.  Motor Car Classics, LLC v. Abbott, 316 S.W.3d 223, 229 (Tex. App.Texarkana 2010, no
pet.) (citing Kelly v. Gen. Interior
Constr., Inc., 301 S.W.3d 653,
658 (Tex. 2010)).  If Tarr met his
pleading burden, the burden of proof shifted to Stelly, who was required to
negate all possible grounds for personal jurisdiction alleged by Tarr.  Id.;
see BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 793
(Tex. 2002).  Personal jurisdiction is a
question of law, which we review de novo. 
Abbott, 316 S.W.3d at 22930 (citing Retamco Operating, Inc. v. Republic Drilling Co., 278
S.W.3d 333, 337 (Tex. 2009)); Milacron
Inc. v. Performance Rail Tie, L.P.,
262 S.W.3d 872, 875 (Tex. App.Texarkana 2008, no pet.).  

            In
resolving this question of law, a trial court must often resolve questions of
fact.  Abbott, 316 S.W.3d at 230 (citing
Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 80506
(Tex. 2002)); Milacron, 262 S.W.3d at
875.  Our courts of appeals may review
the fact-findings for both legal and factual sufficiency.  Abbott,
316 S.W.3d at 230 (citing Ortiz v. Jones,
917 S.W.2d 770, 772 (Tex. 1996)).  We
review de novo the trial courts legal conclusions.  Id.
(citing Marchand, 83 S.W.3d at 794); Milacron, 262 S.W.3d at 875.  Because the record in this case does not
contain findings of fact and conclusions of law, we must imply all findings of
fact necessary to support the trial courts judgment that are supported by the
evidence.  Id. (citing Marchand, 83
S.W.3d at 795).

II.        The Trial Court Did Not
Have Personal Jurisdiction Over Stelly

            The
Due Process Clause of the Fourteenth Amendment limits the power of a state
court to render a valid personal judgment against a nonresident defendant.  World-Wide Volkswagen Corp. v. Woodson,
444 U.S. 286, 291 (1980); Intl Shoe Co. v. State of Washington, Office of
Unemployment Comp. & Placement, 326 U.S. 310 (1945).  A Texas court may exercise personal
jurisdiction over Stelly to the extent authorized by state and federal due process
standards and the long-arm statute.  Schlobohm
v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990).  The Texas long-arm statute permits the
exercise of personal jurisdiction over a nonresident defendant, limited by the
federal constitutional requirements of due process.  Abbott, 316 S.W.3d at
230.  Personal jurisdiction over Stelly
was properly exercised within the confines of due process if (1) Stelly had
established minimum contacts with Texas and (2) the exercise of jurisdiction
over him comported with traditional notions of fair play and substantial
justice.[3]  Id.
(citing Washington, 326
U.S. at 316). 

            Federal due process mandates that
Stelly purposefully avail himself of the privilege of conducting activity
within the forum state, thus invoking the benefits and protections of its laws.
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 47476 (1985); Hanson
v. Denckla, 357 U.S. 235, 253 (1958). 
This minimum contacts analysis protects Stelly from being hailed into
court if his relationship with Texas is too attenuated to support jurisdiction.
 Abbott, 316 S.W.3d at 230 (citing Schlobohm, 784 S.W.2d at 357).  Stellys activities, whether they consisted of
direct acts within Texas or conduct outside Texas, must justify a conclusion
that he could reasonably anticipate being called into court in Texas.[4]  Id.
(citing Woodson, 444
U.S. at 297).  It is the quality and
nature of Stellys contacts, rather than their number, that are important to
the minimum contacts analysis.  Id.  

            To
meet purposeful availment, we first note that it is only Stellys contacts
with the forum that count:  [because]
purposeful availment ensures that a defendant will not be haled into a jurisdiction
solely as a result of . . . the unilateral activity of another party or a
third person.  Michiana Easy Livin Country,
Inc. v. Holten, 168 S.W.3d 777, 785 (Tex. 2005); Guardian Royal Exch.
Assurance, Ltd. v. English
China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991).  Second, the acts relied on cannot be random,
isolated, or fortuitous.  Holten, 168 S.W.3d at 785.  Third,
a defendant must seek some benefit, advantage, or profit by availing itself
of the jurisdiction.  Id.  Jurisdiction is premised on notions of
implied consent--that by invoking the benefits and protections of a forums
laws, a nonresident consents to suit there. 
Id.  

            A.        Specific
Jurisdiction Was Not a Theory Presented to the Trial Court 



            Personal
jurisdiction may be based either on specific jurisdiction or general
jurisdiction. For the trial courts exercise of specific jurisdiction over
Stelly to be proper, two requirements must have been met:  (1) Stellys contacts with the forum must
have been purposeful, and (2) Tarrs cause of action must have arisen from
or relate to those contacts.  Id. at 795; Coleman, 83 S.W.3d at 806; Guardian Royal Exch. Assur., 815 S.W.2d
at 227.  

            It
appears that the theory of specific jurisdiction over Stelly has not been
pursued by Tarr.  At the trial level
hearing on Stellys special appearance, Tarrs trial counsel stated, We are
not pursuing specific jurisdiction in this matter because I dont think were
in a position to prove that.  In
addition, no argument on appeal supports the position that Stellys contacts
with Texas gave rise to Tarrs suit for defamation.

            B.        Stelly Did Not Subject Himself to
General Jurisdiction 

            Tarrs remaining option was to
establish that Stellys contacts gave rise to general jurisdiction.  General jurisdiction exists when the
defendants contacts with Texas are continuous and systematic so that the
forum may exercise personal jurisdiction over the defendant even if the cause
of action did not arise from or relate to activities conducted within the forum
state.  Abbott, 316 S.W.3d at 230 (quoting
Marchand, 83 S.W.3d at
796).  If subject to general jurisdiction
in Texas, the trial court would be permitted to exercise jurisdiction over
Stelly even if the cause of action did not arise from or relate to his contacts
with the forum.  Id. (citing Coleman,
83 S.W.3d at 80607).  Because general
jurisdiction is a more demanding minimum contacts analysis than specific
jurisdiction, Stellys contacts should be such as to justify categorizing
[him] as a resident of this State.  Id. at 23031; In re Estate of Davis, 216 S.W.3d 537, 544 (Tex. App.Texarkana
2007, pet. denied). 

            Tarr informed the
trial court that HRC, Inc., is a nonprofit organization, whos engaged in
training water dogs, the majority of these being labs, to hunt water
fowl.  With respect to Stellys contacts
with the State of Texas, Tarr testified:

Well, Glenn Stelly is also a judge among [the
local] HRC, so any time we have a field trial here in Bowie County, which we
have once a year, frequently he comes. 
Also, he is a dog owner, so sometimes he runs his dogs.  He has numerous contacts with [Texas resident]
Mike Dettrick.  Mike Dettrick is the
treasurer for HRC, Inc., so, therefore, if theres any monies that he gives to
the foundation, vice versa, he will have to have conversations with -- with
Glenn.  [Texas resident] Claudine Cooper
being the secretary, obviously, and Glenn being the president, obviously, you
expect a normal president to administrator [sic] contacts.  I cant tell you how many, but you would
expect there to be a [sic] quite a few number of those.  

 

Tarr also testified Stelly
contacted him in connection with his work as a Foundation board member.  In addition to seeking sponsorships, Tarr
claimed that a local HRC affiliate, the Four States Hunting Retriever Club,
Inc. (Four States), would obtain items from local vendors and raffle them for
revenue at the yearly hunt in Maud, Texas.  Stelly was present in Texas for a period of
four days in 2006 to serve as a judge for the Four States yearly hunt.  

            A
grand hunt of HRC, Inc., was held in 2007 in Maud.  Tarr testified Stelly was on the national
grand hunt committee and that Tarr contacted him to obtain the tax ID number
for the Foundation.  Tarr testified,
[Stelly] and I had a long, long conversation about the local club and check
and can we do this, can we not do this . . . . 
This telephone call by Tarr prompted other calls from Louisiana to Texas,
which resulted in a great relationship of [Tarr] helping him understand what a
foundation can and cannot do.  Stelly
was present during the grand hunt, which lasted five days.  Tarr testified that no director of the
Foundation is paid for their service.  

            General
jurisdiction is premised on the notion of consent.  That is, by invoking the benefits and
protections of a forums laws, a nonresident defendant consents to being sued
there for any cause of action.  Coleman,
83 S.W.3d at 808.  We do not find that
Stelly subjected himself to general jurisdiction on the basis of an unknown
number of telephone calls made to three people in this State.[5]  See
Marsh v. Marsh, 241 S.W.3d 570, 578 (Tex. App.El Paso 2007, no pet.)
(social trips to Texas and telephone calls did not give rise to general
jurisdiction); Eakin v. Acosta, 21
S.W.3d 405, 410 (Tex. App.San Antonio 2000, no pet.) (Even when coupled with
written correspondence and isolated trips to the forum state, long-distance
telephone calls are generally not considered purposeful activities directed
toward residents of the forum state.), disapproved
on other grounds by Marchand, 83
S.W.3d at 794 n.1; N803RA, Inc. v. Hammer, 11 S.W.3d 363, 368
(Tex. App.Houston [1st Dist.] 2000, no pet.) (nonresident defendants contact
of Texas company, numerous telephone calls to the company over period of year,
and receiving commissions by checks drawn on Texas bank insufficient to support
general jurisdiction).  Nor can we
conclude that Stellys attendance as a judge in Texas for two hunts, one by
invitation from Four States, and another whose location was chosen by the
Foundation, is sufficient to subject him to general jurisdiction.  Coleman,
83 S.W.3d at 809 (attendance at the five Texas conferences does not support
the exercise of general jurisdiction.  The
record reflects that the scientific community, not ATCC, selected the
conference locations.) (citing Natl
Indus. Sand Assn v. Gibson, 897 S.W.2d 796, 774 (Tex. 1995) (no general
jurisdiction where nonresident association sent an association representative
to national conference in Texas)).  Also,
because Stelly was not paid for his volunteer activities with the Foundation,
contacts with Texas were not grounded on any expectation or necessity of
invoking the benefits and protections of Texas law, nor were they designed to
result in profit from a business transaction undertaken in Texas.  UAnchor
Adver., Inc. v. Burt, 553 S.W.2d
760, 763 (Tex. 1977).  Thus, the record
does not demonstrate purposeful availment. 


            We
find that Stellys contacts with the State of Texas, comprised of telephone
calls in his capacity as a Foundation director, and personal visits totaling approximately
twelve days, were random, rather than continuous and systematic.  The contacts were not such as to justify
categorizing [Stelly] as a resident of this State.  Schexnayder v. Daniels, 187 S.W.3d
238, 243 (Tex. App.Texarkana 2006, pet. dismd w.o.j.).  General jurisdiction was not established.[6]

III.       Conclusion 

            We reverse the
trial courts judgment and render dismissal of the cause for want of personal
jurisdiction. 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          June
16, 2011

Date Decided:             June
17, 2011

 











[1]HRC
Foundation, Inc. is an Illinois nonprofit organization which raises funds for
the Hunting
Retriever Club., Inc. (HRC, Inc.).  

 





[2]As
an interlocutory ruling on a special appearance, the order was immediately
appealable.  Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (West 2008).





[3]We
are to consider first whether the defendant has established minimum contacts
with Texas; if that threshold is met, we then consider whether the assertion of
jurisdiction comports with fair play and substantial justice.  See Marchand, 83 S.W.3d at 795.

 





[4]Our
long-arm statute allows Texas courts to exercise jurisdiction over foreign
defendants who are doing business within the state.  Tex.
Civ. Prac. & Rem. Code Ann. § 17.042 (West 1997); CSR Ltd. v.
Link, 925 S.W.2d 591, 594 (Tex. 1996); Kelly Inv., Inc. v. Basic Capital
Mgmt., Inc., 85 S.W.3d 371, 374 (Tex. App.Dallas 2002, no pet.).





[5]On
appeal, Stelly also argued that he was immune from general jurisdiction under
the fiduciary shield doctrine.  The
record does not demonstrate that such an argument was raised below.  As a result, we decline to consider it on
appeal.  Alencar v. Shaw, 323 S.W.3d 548,
556 (Tex. App.Dallas 2010, no pet.) (declining to address fiduciary
shield doctrine where not argued to trial court below).





[6]Given
that we do not find purposeful availment, we need not address whether the
exercise of jurisdiction would comport with fair play and substantial
justice.