Charles H. SCHLOBOHM and Joneen
L. Schlobohm, Petitioners,

v.

Rolf L. SCHAPIRO, Individually and
d/b/a Hangers Dry Cleaner and
Laundry, Inc., Respondents.

No. C-8131.

Supreme Court of Texas.

Feb. 14, 1990.

James H. Baumgartner, David Reese,
Dallas, for petitioners.

Howard V. Tygrett, Dallas, for respondents.

COOK, Justice.

This case presents us with a Pennsylvania defendant and the question whether a Texas court has the power to adjudicate a Texan's claims against him. The courts below found that the defendant's contacts with Texas were too minimal to allow the exercise of *in personam* jurisdiction. Because we hold that his contacts with Texas were continuing and systematic enough to permit the imposition of jurisdiction, we reverse the judgment of the court of appeals.

The Pennsylvania defendant is Rolf Schapiro ("Schapiro"). His son, Douglas, lives in Dallas. In July 1984, Schapiro invested $10,000 in a corporation named Hangers, Inc., which was formed by Douglas and his wife to establish a dry cleaning business in Dallas. Schapiro received stock in Hangers and became its sole director. Douglas became president. Although Schapiro did not participate in the incorporation, he conducted Hangers' first meeting in Dallas. Corporate records were kept by his attorney in Pittsburgh.

Hangers leased space for some of its outlets, and Schapiro guaranteed some of the leases. In late 1984, Charles and Joneen Schlobohm leased a building to Hangers. A sixty month lease was negotiated and signed by Douglas, as president. Schapiro did not participate in the negotiations, and he did not guarantee the lease.

In November, Schapiro loaned Hangers $30,000 of his personal funds to buy equipment to expand the business. He later visited Dallas and obtained financing for the rest of the plant, signing a promissory note in his individual capacity for $136,-702.10. Schapiro owned the equipment and leased it to Hangers.

Schapiro's involvement in Hangers' plant expansion was not an unusual event in the history of his entanglement with Hangers. He frequently provided funds during start-up, expansion, and throughout Hangers' decline. Hangers' payroll and other expenses were continually covered by Schapiro's deposits. These sums, which were characterized as loans, totaled an estimated $474,000. Schapiro claimed that Douglas signed promissory notes for the loans, but the notes are not in the record.

The growing financial commitment induced Schapiro to adopt various measures to protect his investment. He first demanded that all shares in the corporation be transferred to him. The transfer was made by Douglas and another shareholder in late 1984 or early 1985, making Schapiro both sole shareholder and sole director of Hangers. In the summer of 1985, as a result of continuous but unsatisfactory communications about the status of the business, Schapiro sent his personal accountant to Dallas to ensure the use of proper accounting procedures. In October 1985 and January 1986, Schapiro went to Dallas himself to investigate Hangers. The visits did nothing to allay his anxiety about the condition of the business, and he resigned as director of Hangers later that month. After another visit to Dallas by Schapiro's accountant to assess Hangers, Schapiro discontinued his relationship with Hangers.

In August 1986, Hangers stopped paying rent on the building leased from the Schlobohms. The Schlobohms sued Hangers, Douglas, and Schapiro for non-payment of rent from August until the end of the lease term in 1989. Schapiro made a special appearance pursuant to TEX.R.CIV.P. 120a. The trial court sustained Schapiro's challenge to jurisdiction and dismissed the cause. The court of appeals affirmed. 759 S.W.2d 470.

## I. THE TEXAS LONG–ARM STATUTE

A Texas court may exercise jurisdiction over a nonresident if two conditions are met. First, the Texas long-arm statute must authorize the exercise of jurisdiction. Second, the exercise of jurisdiction must be consistent with federal and state constitutional guarantees of due process. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 17.041–§ 17.069 (Vernon 1986).

■ Our long-arm statute authorizes the exercise of jurisdiction over those who do business in Texas. *Id.* at § 17.042. The statute lists particular acts that constitute

"doing business." The statute provides, however, that "other acts" of the nonresident may place him within the "doing business" requirement. *Id.; see generally Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662 (Tex.1987), *cert. denied* 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 986 (1988). Although Schapiro's acts in Texas do not fit into any of the particularly described acts listed under Section 17.042 of the long-arm statute, his acts do concern a business enterprise. Jurisdiction, therefore, is authorized by the "other acts" language of Section 17.042.

■ We must now determine whether the exercise of jurisdiction under the long-arm statute is consistent with due process. This court has decided that the broad language of the long-arm statute's doing business requirement allows the statute to reach as far as the federal constitution permits. *See U-Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978). Our inquiry, therefore, focuses on the decisions of this court and of the United States Supreme Court outlining the constitutional test for *in personam* jurisdiction.

## II. THE FEDERAL TEST

Under the federal constitutional test of due process, a plaintiff must overcome two hurdles to justify the exercise of jurisdiction over a nonresident defendant. The plaintiff must initially show that the defendant has established minimum contacts with the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). He must then show that the assertion of jurisdiction comports with fair play and substantial justice. *Id.*

The United States Supreme Court has extensively developed the first prong of the test, the minimum contacts analysis. We now know that an essential goal of the test is to protect the defendant. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). This goal requires that we focus upon his intentional activities and expecta-tions in deciding whether it is proper to call him before the courts of the forum. He must do something purposeful to avail himself of the privilege of conducting activities in the forum, thus invoking the benefit and protection of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Those activities, whether they consist of direct acts within the forum or conduct outside the forum, must justify a conclusion that the defendant should reasonably anticipate being called into court there. *World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567.

The Court has refined the minimum contacts analysis by identifying recurring fact patterns and outlining guidelines for application of the due process test to these patterns. Where the activities of a defendant in a forum are isolated or disjointed, for example, jurisdiction is proper if the cause of action arises from a particular activity. In these cases, jurisdiction is said to be specific. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). The minimum contacts analysis is somewhat narrow, focusing on the relationship among defendant, forum, and litigation. *Id.*, (citing *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). On the other hand, where the defendant's activities in the forum are continuing and systematic, jurisdiction may be proper without a relationship between defendant's particular act and the cause of action. In these cases, jurisdiction is often said to be general. *Helicopteros*, 466 U.S. at 414, n. 9, 104 S.Ct. at 1872, n. 9. The minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state.

Under the second prong of the test of due process, plaintiffs must show that the exercise of *in personam* jurisdiction comports with fair play and substantial justice. *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158. Because the minimum contacts analysis now encompasses so many

considerations of fairness, it has become less likely that the exercise of jurisdiction will fail a fair play analysis. Courts must consider the fair play analysis, however, because the case law makes it clear that this analysis is separate and distinct from the minimum contacts issue. *See Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–77, 105 S.Ct. 2174, 2184–85, 85 L.Ed.2d 528 (1985).

### III. THE TEXAS TEST

■ In an effort to ensure compliance with the federal constitutional standard, Texas has designed its own formula for specific jurisdiction:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

(2) The cause of action must arise from, or be connected with, such act or transaction; and

(3) The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*O'Brien v. Lanpar Co.,* 399 S.W.2d 340, 342 (Tex.1966).

The Texas formula tracks elements of the jurisdictional test that have evolved in United States Supreme Court decisions. The first part of the Texas formula reflects the key component of the minimum contacts analysis, the requirement that a defendant purposefully avail himself of the benefits of the forum and reasonably expect to be called to court there. The third part reflects the fair play and substantial justice prong of the jurisdictional test and specifies the factors that this state considers important in the fair play analysis.

In its second part, the Texas formula reflects the concept of specific jurisdiction.

The formula does not, however, include the concept of general jurisdiction. For this reason, the formula is incomplete and could give litigants the false idea that jurisdiction may be premised only on an act or transaction of the defendant that gives rise to a cause of action. We believe that the Texas formula should be as complete an outline of the constitutional standard as possible. Accordingly, we modify the second part of the formula to state that jurisdiction may also arise from the continuing and systematic contacts of the defendant with Texas, even if the cause of action does not arise from a specific contact. The requirement should now read:

(2) The cause of action must arise from, or be connected with, such act or transaction. Even if the cause of action does not arise from a specific contact, jurisdiction may be exercised if the defendant's contacts with Texas are continuing and systematic.

In adopting this modification, we do not change the law. We simply clarify what federal and state cases have acknowledged for many years, that is, that jurisdiction is possible whether either single or numerous contacts between forum and defendant exist. *See Helicopteros,* 466 U.S. at 414–15, 104 S.Ct. at 1872–73; *Zac Smith,* 734 S.W.2d at 663.

### IV. APPLICATION

■ In considering how far our courts may constitutionally reach in the instant case, we reject mechanical application of any test, including the Texas formula. We believe, however, that the Texas formula provides us with a useful jurisdictional checklist, one which helps ensure that we have considered all aspects of the necessary analysis.

Our first inquiry centers on the second part of the formula, the question whether jurisdiction in this case is premised on continuing and systematic activity or on a cause of action that arises from isolated and sporadic activity. The Schlobohms rely on the number and continuity of Schapiro's actions to support their proposition that an activity in which Schapiro did not directly

participate, that is, the negotiation and signing of their lease, subjects him to jurisdiction. Their claim of jurisdiction is, therefore, based on continuing and systematic activity. Schapiro agrees that the assertion of jurisdiction in this case must be based on such activity. Schapiro further agrees that he did maintain a number of contacts with Texas. Despite this concession, however, he insists that his "primary" contacts amount to nothing more than his negotiation for the equipment loan and his status as sole stockholder of Hangers.

Schapiro's condensation of activities into two "primary" contacts suggests an unfamiliar approach to the minimum contacts inquiry. The inquiry does not authorize defendants to review their relationship with the forum and excise the contacts they regard as most pertinent to the jurisdictional issue. It demands instead that all contacts be carefully investigated, compiled, sorted, and analyzed for proof of a pattern of continuing and systematic activity. By adopting this approach, we conclude that Schapiro's "primary" contacts are but two of many activities in his continuing relationship with this state.

Our second inquiry concentrates on the first part of the Texas formula, purposeful availment. The issue is whether Schapiro's Texas-related activities, irrespective of their volume, justify our conclusion that Schapiro purposefully directed his activities into this forum. By framing this issue in the common-sense language of *World–Wide Volkswagen*, we clarify it: should Schapiro have reasonably anticipated the call to a Texas court? *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567.

Schapiro became actively involved in a Texas business and voluntarily continued his commitment for almost two years. He was investor, stockholder, director, advisor, lender, and guarantor for Hangers. He visited the state and maintained regular communications with some of its citizens. When we consider the degree of his involvement, we regard it difficult to believe that anyone in Schapiro's position could have been surprised by the call to litigation in Texas. It is clear that he purposefully availed himself of the benefits of this forum. We hold that Schapiro's minimum contacts with Texas were continuing and systematic enough to subject him to the jurisdiction of a Texas court.

Having determined that Schapiro had minimum contacts with Texas, we must now proceed to the final inquiry, which is expressed in the third part of the Texas formula. The question is whether, despite the existence of minimum contacts, there is any reason why our assertion of jurisdiction in this case would offend traditional notions of fair play and substantial justice. In considering the factors suggested in the Texas formula, we note that the quality, nature and extent of Schapiro's activity in Texas justify a conclusion that he should expect to be called to our courts. Nothing in the record indicates that litigation in a Texas court would be excessively burdensome or inconvenient to him. Finally, litigation in Texas will provide both parties with the benefits and protection of our laws. We hold that the exercise of jurisdiction over Schapiro by a Texas court does not offend traditional notions of fair play and substantial justice.

We reverse the judgment of the court of appeals. We remand the cause to the trial court for trial on the merits.

HECHT, J., not sitting.