TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00048-CV






Rowland & Rowland, P.C., Appellant



v.



Texas Employers Indemnity Company, In Receivership; Mildred Mason; William F.


Mason, II; Karen Reese; Connie Parmer; and Cinderella Dismukes, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 97-02251, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING 







 This is an interlocutory appeal arising out of the denial of a special appearance filed
by appellant Rowland & Rowland, P.C. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(7)
(West 1997). The underlying suit involves a dispute between appellant Rowland & Rowland, a
law firm representing the survivors of William Mason, and the appellee, Texas Employers
Indemnity Company ("TEIC"), over the distribution of judgment proceeds awarded under the
Tennessee Tort Claims Act. In one point of error, Rowland & Rowland argues that the trial
court's denial of its special appearance was erroneous. We will affirm.


BACKGROUND

 This case originally arose from the tragic death of William Mason, a Texas trucker,
who was killed while acting in the scope of his employment. Mason was killed when his truck
was struck by a rockslide in Cumberland County, Tennessee. His widow, Mildred Mason,
successfully filed a workers' compensation claim for death benefits against TEIC. Mildred Mason
was represented in her claim against TEIC by the Texas law firm of Webb, Stokes, Sparks,
Parker, Junell & Choate, L.L.P. ("Webb-Stokes").

 After TEIC began paying Mildred Mason weekly death benefits, she and her
children, who are all non-dependent adults, filed a wrongful death action against the State of
Tennessee under the Tennessee Tort Claims Act. (1) Because this cause of action had to be filed in
Tennessee with the Tennessee Claims Commission, Webb-Stokes referred Mildred and her four
adult children to a Tennessee law firm, Rowland & Rowland. 

 After the wrongful death litigation began, TEIC, through its local Tennessee
counsel, Morton, Lewis, King & Krieg, exchanged several letters with Rowland & Rowland
regarding its subrogation interest in the wrongful death action. These letters informed Rowland
& Rowland about the continuing death benefits TEIC was paying Mildred Mason and about
TEIC's expectation of full payment for its subrogation claim. In response, Mitchell Cramer, a 
Rowland & Rowland attorney, sent a letter directly to TEIC's San Angelo office, stating the
following:


This letter is to confirm conversations and correspondence between this firm and
the law firm of Morton, Lewis, King & Krieg in Knoxville. My understanding is
that we will continue to protect your subrogation claim without the necessity of
Texas Employer's Indemnity Company being added as a party and that I will allow

your attorneys access to all pretrial discovery and keep them advised of
developments as they occur. Your attorneys have furnished me information that
your subrogation claim is $12,571.60 as of January 14, 1988, representing 
approximately fifty-six weeks of compensation benefits of $179.85 per week and
paid medical expenses of $167.00. Further, it is my understanding that your
subrogation claim also includes compensation benefits of $179.85 per week and
that you are to continue paying Mrs. Mason for her life subject to her being
unmarried. I am not in a position to either confirm or deny the amount set forth
in your attorney's letter. I am sure that when this matter is concluded that there
will be additional subrogation interest. Suffice to say that we will be in a position
to review all of these with you at the time the matter is concluded.


We continue to actively represent Mrs. Mason and will continue to represent your
interests in this matter.



(Emphasis added). 

 Relying on these representations, TEIC did not intervene in the Tennessee
litigation. In 1991, Rowland & Rowland litigated the wrongful death claim against the State of
Tennessee. In September 1996, the Tennessee Claims Commission awarded Mildred Mason and
her adult children $217,000. (2) Rowland & Rowland's distribution of the $217,000 forms the basis
of the underlying lawsuit.


THE CONTROVERSY

 Mildred Mason, her adult children, and the Receiver for TEIC (3) were unable to
agree on the amount of the recovery subject to the workers' compensation lien. Mildred Mason
conceded that her share of the recovery should be paid to TEIC. However, the children claimed
that, since they were not beneficiaries under the Texas Workers' Compensation Act, their share
of the recovery was not subject to the lien. TEIC claimed that the entire recovery was subject to
the lien and therefore should be satisfied before any member of the Mason family recovered
anything. After repeated attempts to reach an agreement failed, Rowland & Rowland ignored
TEIC's claim to the entire recovery and distributed the proceeds by paying Mildred Mason's share
of the recovery to TEIC, and dividing the rest between the attorneys and four of Mildred's adult
children. (4)

 In February 1997, TEIC filed suit against Rowland & Rowland alleging that
Rowland & Rowland's representations and subsequent conduct (i.e., the distribution of money to
Mason's surviving children) constituted breach of contract, conversion, fraud, and negligent
misrepresentation. In response to TEIC's petition, Rowland & Rowland filed a special appearance
pursuant to Rule 120a of the Texas Rules of Civil Procedure. In support of its special appearance,
Rowland & Rowland argued, as it does here, that the trial court lacked in personam jurisdiction
to hear TEIC's claims because Rowland & Rowland lacked the necessary "contacts" with Texas
as required by the due process clauses of both the federal and state constitutions. The special
appearance was referred to a Special Master, who recommended that it be denied on the grounds
that Rowland & Rowland's contacts with Texas formed a sufficient basis for specific jurisdiction. 
Pursuant to the Special Master's recommendation, the trial court rendered its order denying the
special appearance. Rowland & Rowland filed this interlocutory appeal presenting only one issue:
whether the trial court erred in assuming in personam jurisdiction over Rowland & Rowland. We
will overrule the issue presented and affirm the trial court's denial of the special appearance.

DISCUSSION


 The constitutional standards for determining personal jurisdiction over a
nonresident defendant are well established. CMMC v. Salinas, 929 S.W.2d 435, 437 (Tex. 1996);
C&R Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996); National Indust. Sand Ass'n v. Gibson, 897
S.W.2d 769, 772 (Tex. 1995); Guardian Royal Exch. v. English China Clays, P.L.C., 815
S.W.2d 223, 226-28 (Tex. 1991); Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990). 
"Suffice it to say that the rule in these cases is that a state court can take personal jurisdiction over
a defendant only if it has some minimum, purposeful contacts with the state, and the exercise of
jurisdiction will not offend traditional notions of fair play and substantial justice." CMMC, 929
S.W.2d at 437.

 The United States Supreme Court has refined the minimum contacts analysis into
specific and general jurisdiction. See Guardian Royal, 815 S.W.2d at 227. When specific
jurisdiction is asserted, the cause of action must arise out of or relate to the nonresident
defendant's contact with the forum state in order to satisfy the minimum contacts requirement. 
Id. However, the contact must have resulted from the nonresident defendant's purposeful conduct
and not the unilateral activity of the plaintiff or others. Id. Furthermore, the nonresident
defendant's activities must have been "purposefully directed" to the forum and the litigation must
result from alleged injuries "that arise out of or relate to" those activities. Id. at 228. When
specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among
the defendant, the forum, and the litigation. Id.

 General jurisdiction may be asserted when the cause of action does not arise from
or relate to the nonresident defendant's purposeful conduct within the forum state, but there are
continuous and systematic contacts between the nonresident defendant and the forum state. Id. 
When general jurisdiction is asserted, the minimum contacts analysis is more demanding and
requires a showing of substantial activities in the forum state. Id. In the present case, it is
undisputed that the trial court lacked general personal jurisdiction to hear TEIC's claims against
Rowland & Rowland. (5) We will therefore only examine whether the trial court erroneously
determined that it had specific in personam jurisdiction over Rowland & Rowland.

 As stated above, specific jurisdiction refers to jurisdiction in which the cause of
action arises out of, or is substantially connected with, the actual contact with the forum. Id. at
227; Memorial Hosp. Sys. v. Fisher Ins., 835 S.W.2d 645, 649 (Tex. App.--Houston [14th Dist.]
1992, no writ). Thus, in analyzing minimum contacts, it is not the number, but rather the quality
and nature of the nonresident's contacts with Texas that are important. See Memorial Hosp. Sys.,
835 S.W.2d at 649. 

 In the present case, we conclude that Rowland & Rowland had at least two
purposeful contacts with Texas. The first "contact" was Rowland & Rowland's letter which was
sent directly to TEIC's San Angelo office confirming that the firm would "continue to protect"
the subrogation interests of TEIC "without the necessity of TEIC being added as a party" to the
wrongful death action in Tennessee. The second was Rowland & Rowland's distribution of a
substantial portion of the $217,000 wrongful death judgment to Texas residents. Specifically,
Rowland & Rowland unilaterally decided to distribute $24,111.11 to the Texas law firm of Webb-
Stokes, and a total of $94,416.07 to four of William Mason's surviving adult children, all of
whom are residents of Texas. 

 Furthermore, it was these specific "contacts" which give rise to the claims TEIC 
asserts against Rowland & Rowland. In particular, it is TEIC's contention that Rowland &
Rowland's promise to "protect" its subrogation interest was breached or misrepresented when the
firm distributed the proceeds to Mason's four non-dependent children before satisfying TEIC's
subrogation lien. Whether Rowland & Rowland's actions were proper is not before us today. All
we decide is that Rowland & Rowland's promise to "protect" TEIC's subrogation interest in
Texas and Rowland & Rowland's distribution of substantial proceeds in Texas are sufficient
purposeful minimum contacts with this State to satisfy due process.

 Having determined that Rowland & Rowland had sufficient minimum contacts in
Texas, we must now decide whether the state court's assertion of in personam jurisdiction
comports with "traditional notions of fair play and substantial justice." See Guardian Royal, 815
S.W.2d at 228. In this inquiry it is incumbent upon the defendant to present "a compelling case
that the presence of some consideration would render jurisdiction unreasonable." Id. at 231
(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477-78 (1985)). Only in rare cases will
the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident
defendant has purposefully established minimum contacts with the forum state. Id.; see also
Schlobohm, 784 S.W.2d at 358 (it has become less likely that exercise of jurisdiction will fail fair-play analysis).

 In support of its claim that personal jurisdiction in this case would offend traditional
notions of fair play and substantial justice, Rowland & Rowland argues it would be unfair to
require "a small law firm" to litigate a case "1500 miles from home." Moreover, Rowland &
Rowland argues that Texas has "no special interest in [the] dispute, which involves the
distribution of the proceeds of a Tennessee wrongful death judgment." Finally, Rowland &
Rowland argues that Tennessee would be the "most efficient" forum to resolve the dispute because
Tennessee's laws of descent and distribution will be important to the case. We disagree.

 The State of Texas has a substantial interest in this case, and the exercise of
jurisdiction over Rowland & Rowland will not offend traditional notions of fair play and
substantial justice. First, the mere fact that Rowland & Rowland is not physically located in
Texas is not persuasive in deciding personal jurisdiction. See Burger King, 471 U.S. at 476 (it
is inescapable fact of modern commercial life that substantial amount of business is transacted
solely by mail and wire communications across state lines, thus obviating need for physical
presence within state in which business is conducted). Second, we conclude that Texas courts
have an interest in cases where there is division of a significant portion of judgment proceeds
among Texas residents arising from the wrongful death of a Texas resident. Finally, there is an
abundance of case law in which Texas courts have manifested their interest in examining
settlements in third-party actions to ensure an insurance carrier's right to subrogation. See, e.g.,
Employers Cas. Co. v. Henager, 852 S.W.2d 655, 659 (Tex. App.--Dallas 1993, writ denied)
(subrogation rights are so strong that public policy dictates that compromising such rights supports
cause of action); Prewitt & Sampson v. City of Dallas, 713 S.W.2d 720, 722-23 (Tex.
App.--Dallas 1986, writ ref'd n.r.e.) (action will lie when party interferes with insurance carrier's
subrogation rights). Therefore, we hold that Rowland & Rowland has not met its burden of
showing that under the facts of this case, the exercise of in personam jurisdiction in Texas offends
traditional notions of fair play and substantial justice. We overrule the sole issue presented by
Rowland & Rowland.


CONCLUSION

 Having overruled the only issue in this interlocutory appeal, we affirm the trial
court's order denying Rowland & Rowland's special appearance.



 
 

 Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: July 16, 1998

Publish
1. Mildred Mason's adult children who joined Mildred in filing a wrongful death claim
against the State of Tennessee included William F. Mason II, Karen Reese, Connie Parmer, Billie
D. Crimm, and Cinderella Dismukes. All of these children are Texas residents.
2. It is not clear from the record why it took five years for the Tennessee Claims Commission
to render its judgment.
3. In March 1992, TEIC was placed into receivership. The receiver initiated the underlying
cause of action to recoup TEIC's subrogation interest. 
4. The fifth child, Billie D. Crimm waived her interest in the recovery in favor of her
siblings.
5. Rowland & Rowland is a Professional Corporation, incorporated under the laws of the
State of Tennessee. It is not a resident of the State of Texas; it is not required to, nor does it
maintain a registered agent in Texas; it does not actively solicit business in Texas, nor does it
maintain a place of business in Texas; it has no employees, agents, real property, or tangible
property in Texas; and finally, it is not a party to any contract providing for performance in
Texas. Therefore, we hold that, on the strength of these facts, Rowland & Rowland did not have
"continuous and systematic" contacts such that the trial court could claim general jurisdiction over
the case.



 of jurisdiction not comport with fair play and substantial justice when the nonresident
defendant has purposefully established minimum contacts with the forum state. Id.; see also
Schlobohm, 784 S.W.2d at 358 (it has become less likely that exerc