NO









NO. 12-03-00430-CV

 

                 IN
THE COURT OF APPEALS

 

      TWELFTH COURT OF
APPEALS DISTRICT

 

                           TYLER, TEXAS

 

 

DION DURRELL + ASSOCIATES, INC.,    '     APPEAL FROM THE 354TH

APPELLANTS

 

V.                                                                         '     JUDICIAL DISTRICT COURT OF

 

S.J. CAMP
& COMPANY,

APPELLEE                                                       '     RAINS COUNTY, TEXAS

 





                                                                      OPINION

Dion Durrell + Associates, Inc. (ADion@) appeals the trial court=s denial of its special appearance[1]
in a suit brought by S.J. Camp & Company (ACamp@).  Dion raises one issue on
appeal.  We affirm.

 

                                                     Factual Background

Camp is a reinsurance intermediary[2]
located in Emory, Texas.  In December
1999, National Health Insurance Company (ANHIC@) of Grand Prairie, Texas contacted Camp regarding NHIC=s reinsurance needs.  NHIC and
Camp reached an agreement whereby Camp would act as the sole reinsurance
intermediary between NHIC, the reinsured, and a reinsurer.  While seeking a reinsurer, Camp contacted
Dion, a Canadian insurance intermediary located in Toronto, Ontario.  








On February 2, 2000, Robert Martin (AMartin@) and Steve Prince (APrince@) traveled to Grand Prairie to meet with Camp and NHIC
representatives.  The meeting resulted in
NHIC agreeing to pay Dion a fee of more than $100,000.00 to structure a
reinsurance proposal to be submitted to a potential reinsurer.  

On July 25, 2000, Martin again went to Grand Prairie with Camp in
order to meet with representatives of NHIC and Allianz Risk Transfer (Bermuda),
Limited (AAllianz Bermuda@), a reinsurance company.  On
August 1, 2000, NHIC sent a letter to Camp (the AAugust 1 letter@) acknowledging that Camp was the only authorized intermediary for
obtaining reinsurance for NHIC during 1999, 2000, and 2001.  The August 1 letter further stated that Camp
was the Abroker of record@ and that the broker of record letter extends to Dion and Allianz
Bermuda.  On August 17, 2000, NHIC and
Allianz Bermuda reached an agreement concerning reinsurance.

On March 15, 2001, NHIC and Allianz Bermuda signed an annual renewal
term reinsurance agreement effective January 1, 2000.  The agreement stated that the reinsurance
agreement was to be performed in Texas and that Athis agreement shall be interpreted in accordance with the laws of the
State of Texas.@  However, the agreement also
stated, A[T]here is no intermediary associated with this business of this
agreement.  All reports and remittances
are to be made directly between the parties.@  

 

                                                Procedural
Background

On July 22, 2002, Camp filed suit against NHIC, Dion, Allianz Risk
Transfer, Inc., and Allianz Bermuda[3]
alleging that the defendants (1) had breached the agreement that Camp would be
the reinsurance intermediary for NHIC during the years of 1999, 2000, and 2001,
(2) had interfered with Camp=s existing contractual relations, and (3) had conspired to interfere
with said contractual relations.  On
August 26, 2002, Dion filed its special appearance, and subsequently filed its
amended special appearance.  Following a
hearing on June 27, 2003, the trial court denied Dion=s special appearance and entered the following findings of fact and
conclusions of law:

 

1.         Plaintiff,
S.J., Camp & Company (CAMP), a reinsurance intermediary, is a corporation
duly organized under the laws of the State of Texas.

 

2.         Defendant,
National Health Insurance Company (NHIC), is a health insurance company duly
organized under the laws of the State of Texas.








3.         DION
is a foreign actuarial and insurance consulting firm licensed under the laws of
the Province of Ontario, Canada.  DION=s principal place of business is in Toronto,
Ontario, Canada.  DION has no place of
business, office, mailing address, telephone number, employees or property
within Texas.

 

4.         NHIC
authorized Camp to act as Broker of Record from December 15, 1999 forward for
the Financial Reinsurance on Policy Form USA - 100 for the issue years of 1999,
2000 and 2001.

 

5.         In
January 2000, Camp by and through Steven J. Camp, contacted DION by phone and
fax to discuss the reinsurance needs of NHIC.

 

6.         In
January 2000, CAMP mailed DION underwriting materials for review.

 

7.         In
February 2000, Steven J. Camp met with DION=s representatives at the DFW Marriott Hotel to
discuss the reinsurance needs of NHIC and later transported those
representatives to the offices of NHIC in Grand Prairie, Texas for meetings
with representatives of NHIC.

 

8.         On
July 25, 2000, Steven J. Camp met with a representative of DION who flew to DFW
Airport where CAMP transported him to the offices of NHIC in Grand Prairie,
Texas for a second meeting with NHIC.

 

9.         Other
than the above, no employees of DION have ever traveled to Texas to meet with
any of the parties.

 

10.        Arising
out of those meetings in Texas, DION agreed to structure a reinsurance proposal
for NHIC and entered into a contract with NHIC for this purpose.

 

11.        NHIC
and CAMP entered into separate written confidentiality agreements with DION
regarding disclosure of DION=s proprietary information.  The confidentiality agreements provide that
they Ashall be governed and construed in accordance
with the laws of the Province of Ontario and laws of Canada applicable therein.@  DION had
entered into no other written contracts with CAMP or NHIC.

 

12.        NHIC
agreed to pay DION a sum of money to structure a reinsurance proposal to be
submitted to a potential reinsurer.

 

13.        During
the course of dealings between NHIC, CAMP and DION, there were many
communication exchanges in the form of telephone, fascimile, and e-mail between
those parties with regards to the financial reinsurance needs of NHIC.

 

14.        DION
did not waive its special appearance by filing its Motion to Transfer Venue
subject to Special Appearance.

 

15.        DION
did not waive its special appearance by raising the issue of jurisdictional
defects.

 

16.        The
State of Texas does not have general jurisdiction over DION, as DION does not
have substantial enough contacts with the State of Texas to give rise to
general jurisdiction over a non-resident.

 

17.        The
State of Texas does not have general jurisdiction over DION, as CAMP has
alleged sufficient facts to give the Court specific jurisdiction over DION in
this cause of action.

 








On appeal, Dion contends that the trial court erred in concluding that
it had specific jurisdiction over Dion.

 

                                                       Standard of Review

The plaintiff has the burden to plead a prima facie showing of
jurisdiction.  Haught v.
Agricultural Prod. Credit, 39 S.W.3d 252, 256 (Tex. App.BTyler 2000, pet. denied).  In a
special appearance, the nonresident defendant has the burden of proof to negate
all bases of personal jurisdiction.  Kawasaki
Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985).  On appeal, we determine the special
appearance on the basis of the pleadings, any stipulations by and between the
parties, such affidavits and attachments as may be filed by the parties, the
result of discovery processes, and any trial testimony.  Tex.
R. Civ. P. 120a; De Prins v. Van Damme, 953 S.W.2d 7,
18-19 (Tex. App.BTyler 1997, pet. denied). 
Whether a court has personal jurisdiction over a defendant is a question
of law and, therefore, our review is de novo. 
See BMC Software Belgium, N.V. v. Marchand, 83
S.W.3d 789, 794 (Tex. 2002).  Texas
courts may exercise jurisdiction over nonresidents if they voluntarily submit
to jurisdiction or if they may be held to answer under the State=s long-arm statute.  Allianz
Risk Trans. Bermuda v. S.J. Camp & Co., 117 S.W.3d 92, 95 (Tex.
App. B Tyler 2003, no pet.).

 

                                                  Texas Long-Arm Statute 

Before a Texas court may exercise jurisdiction over a nonresident
defendant, two conditions must exist: (1) the Texas long-arm statute authorizes
the exercise of jurisdiction, and (2) the exercise of jurisdiction is
consistent with federal and state constitutional guarantees of due
process.  See Schlobohm v.
Schaprio, 784 S.W.2d 355, 356 (Tex. 1990).  The Texas long-arm statute states as follows:

 

In addition to other acts that may constitute
doing business, a nonresident does business in this state if the nonresident:

 

(1)        contracts
by mail or otherwise with a Texas resident and either party is to perform the
contract in whole or in part in this state;

 

(2)        commits
a tort in whole or in part in this state; or 

 








(3)        recruits
Texas residents, directly or through an intermediary located in this state, for
employment inside or outside this state.

 

Tex. Civ. Prac. & Rem. Code Ann. ' 17.042 (Vernon 1997).

The broad language of Section 17.042 extends Texas courts= personal jurisdiction as far as the federal constitutional
requirements of due process will permit. 
BMC Software Belgium, N.V.,  83 S.W.3d at 795.  Personal jurisdiction over nonresident
defendants is constitutional when two conditions are met:  (1) the defendant has established minimum
contacts with the forum state, and (2) the exercise of jurisdiction comports
with the traditional notions of fair play and substantial justice.  Id. (citing Int=l Shoe Co. v. Washington, 326 U.S. 310,
316, 66 S. Ct. 154, 158, 90 L. Ed. 2d 95 (1945)).

 

                                                      Specific Jurisdiction

In an effort to ensure compliance with the federal constitutional
standard, Texas has designed its own formula for specific jurisdiction:

 

(1)        The
nonresident defendant or foreign corporation must purposefully do some act or
consummate some transaction in the forum state;

 

(2)        The
cause of action must arise from, or be connected with, such act or
transaction.  Even if the cause of action
does not arise from a specific contact, jurisdiction may be exercised if the
defendant=s contacts with Texas are continuing and
systematic.

 

(3)        The
assumption of jurisdiction by the forum state must not offend traditional
notions of fair play and substantial justice, consideration being given to the
quality, nature, and extent of the activity in the forum state, the relative
convenience of the parties, the benefits and protection of the laws of the
forum state afforded the respective parties, and the basic equities of the
situation.

 

Schlobohm, 784 S.W.2d at 358.

These three factors track the elements of the jurisdictional test that
have evolved in the United States Supreme Court decisions.  Id.  When applying the jurisdictional formula to a
particular case, we must weigh the facts carefully and avoid the mechanical
application of any test.  Fish v.
Tandy Corp., 948 S.W.2d 886, 894 (Tex. App.BFort Worth 1997, writ denied).  

 

                                                                 Application








We first examine the evidence to determine if Dion performed acts
which would establish minimum contacts with Texas.  NHIC, a Texas corporation, paid Dion over an
hundred thousand dollars to find it a reinsurer.  Dion sent its representatives to Texas in both
February and July of 2000 to work out reinsurance details with NHIC.  Dion made innumerable phone calls, and sent
both facsimiles and e-mails to Texas during the period between February and
August, when the reinsurance contract was agreed upon by NHIC and Allianz
Bermuda.  All of these acts demonstrate
that Dion was facilitating the consummation of the reinsurance contract in
Texas.  See id.

The causes of action alleged by Camp involve Dion=s alleged attempt to use the reinsurance contract to deprive Camp of
its commission for finding a reinsurer for NHIC.  It is undisputed that after Camp contacted
Dion, Dion became the principal contributor to the efforts which ultimately resulted
in the reinsurance contract between NHIC and Allianz Bermuda.  The reinsurance contract itself was to be
performed in Texas.  Such acts, on Dion=s part, constitute purposeful minimum contacts.  See BMC Software Belgium, N.V.,
83 S.W.3d at 795. 

We now evaluate Dion=s contacts to determine whether the trial court=s assertion of specific jurisdiction comports with fair play and
substantial justice.  See Guardian
Royal Exch. v. English China, 815 S.W.2d 223, 228 (Tex. 1991) (citing Burger
King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S. Ct. 2174, 2184, 85
L. Ed. 2d 528 (1985)).  In conducting our
analysis, we consider (1) the burden on the defendant, (2) the interest of the
foreign state in adjudicating the dispute, (3) the plaintiff=s interest in  obtaining
convenient and effective relief, (4) the interstate judicial system=s interest in obtaining the most efficient resolution of
controversies, and (5) the shared interest of the several states in furthering
fundamental substantive social policies. 
See Guardian Royal Exch., 815 S.W.2d at 228.

First, Dion claims it will be burdened by having to send three
witnesses in the case to Texas.  Dion was
as indispensable a party to the preparation of the reinsurance contract as it
is in the litigation springing therefrom. 
During the events leading to the reinsurance contract, Dion sent its
people to Texas rather insisting that the other parties meet in Ontario.  Jurisdiction has been established in Texas
for all of the other parties to the instant lawsuit.  It is less burdensome for Dion to come to
litigate in Texas than for the other parties to travel to Ontario.  Considering the aforementioned circumstances,
it is relatively less burdensome for Dion to come to Texas to defend its
interests.








Second, Texas has a strong interest in protecting its corporations
when a possible tort has been committed against one of them.  See Thompson v. Handa Lopez, Inc.,
998 F.Supp.738, 745 (W.D. Tex. 1998). 
Dion is among three defendants whom Camp alleges tortiously interfered
with its NHIC contract.  The interference
with its NHIC contract would have had tortious consequences affecting Camp in
Texas.  See Union Carbide Corp. v.
UGI Corp., 731 F. 2d 1186, 1190 (5th Cir. 1984).

Third, Camp, as a Texas corporation with its principal place of
business in Texas, can obtain the most convenient and effective relief in a
Texas court.  Finally, Texas is the most
efficient venue for the resolution of this controversy because each of the
other three defendants in this case are already subject to the jurisdiction of
Texas courts.[4]  Accordingly, we hold that jurisdiction is
permitted by the Texas long-arm statute and that the exercise of specific
jurisdiction by  Texas courts over Dion
in the case at hand meets both the federal and state requirements of due
process.  Dion=s sole issue is overruled.

 

                                                                 Conclusion

Having overruled Dion=s sole issue, we affirm the trial court=s order denying Dion=s special appearance.

 

 

    
JAMES T. WORTHEN    

    
Chief Justice

 

 

Opinion
delivered May 12, 2004.

Panel consisted of Worthen, C.J., Griffith, J.
and DeVasto, J.

 

 

 

 

 

 

                                                                     (PUBLISH)

 











[1]
See
Tex. Civ. Prac. & Rem. Code Ann.
' 51.014(a)(7) (Vernon Supp. 2004).





[2]
Camp is a corporate entity that engages in
business with insurance companies who seek to reinsure policies they have
written.





[3] Allianz Risk Transfer, Inc. is a corporation
organized under the laws of the State of New York with its principal place of
business in New York City.  Allianz
Bermuda is incorporated under the laws of Bermuda and is located in Hamilton,
Bermuda.





[4]
The fifth factor has no implications in the
instant case.