TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00456-CV






Avery Dennison Corporation and Rocal, Inc., Appellants


v.


Kiwa Chemical Industry Co., Ltd., Appellee







FROM THE DISTRICT COURT OF CONCHO COUNTY, 119TH JUDICIAL DISTRICT

NO. 3599, HONORABLE BEN WOODWARD, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N



 In 2001, Wayne Osborne, Inc., a Texas company, was awarded a construction project
by the Texas Department of Transportation in Concho County. Osborne contracted with Lange
Construction Company, Ltd., a Delaware company registered and authorized to do business in Texas,
for the roadside signs required by the project. Lange contracted with Rocal, Inc., an Oklahoma
company, for the sign materials. Rocal contracted with Avery Dennison Corporation, a foreign
company doing business in Texas, for the reflective sheeting used in the signs, which Avery bought
from Kiwa Chemical Industry Co., Ltd., a Japanese company, re-labeled as an Avery product, and
sold to Rocal without modification.

 In March 2002, Rocal sued five defendants, including Lange, alleging that it was
owed payment for the signs it provided for the construction project. Lange cross-claimed against
Rocal and sued Avery, alleging that the signs were rejected as defective. Avery and Rocal both sued
Kiwa, which filed a special appearance, arguing that it was not subject to the jurisdiction of the
Texas courts. The trial court granted Kiwa's special appearance and dismissed it from the suit. 
Rocal and Avery appeal. We affirm the trial court's order.


Standard of Review

 In attempting to subject a nonresident defendant to jurisdiction in Texas, the plaintiff
bears the initial burden of pleading sufficient allegations to satisfy the Texas long-arm statute. BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002). The burden then shifts to
the defendant to affirmatively negate all jurisdictional bases asserted by the plaintiff. Id. Whether
a trial court properly granted or denied a special appearance is a question of law that we review de
novo, id. at 794, and that determination is reviewable by interlocutory appeal. Tex. Civ. Prac. &
Rem. Code Ann. § 51.014(a)(7) (West Supp. 2004-05). In making a jurisdictional determination,
the trial court may and should resolve necessary factual questions, BMC Software, 83 S.W.3d at 794,
including whether the defendant engaged in tortious activity that foreseeably caused harm in Texas. 
See Siskind v. Villa Found. for Educ., Inc., 642 S.W.2d 434, 437 (Tex. 1982).

 In determining whether the evidence is sufficient to support a trial court's factual
determinations, we consider the entire record and conduct an ordinary sufficiency review, setting
aside the trial court's finding only if it is so against the great weight and preponderance of the
evidence as to be manifestly erroneous or unjust. In re Estate of King, 244 S.W.2d 660, 661 (Tex.
1951). The trial court as fact-finder is the sole judge of witness credibility and the weight to be given
to testimony, Wyatt v. Wyatt, 104 S.W.3d 337, 340 (Tex. App.--Dallas 2003, no pet.), and we will
not disturb a trial court's resolution of evidentiary conflicts that turn on credibility determinations
or the weight of the evidence. Benoit v. Wilson, 239 S.W.2d 792, 796 (Tex. 1951). If a trial court
does not issue findings of fact and conclusions of law when ruling on a special appearance, we will
assume that the court made all necessary findings of fact that are supported by the evidence. BMC
Software, 83 S.W.3d at 795. If the record includes the reporter's and clerk's records, those implied
findings may be challenged for legal and factual sufficiency. Id. However, we will affirm the trial
court's determination on any legal theory supported by the evidence. Worford v. Stamper, 801
S.W.2d 108, 109 (Tex. 1990). 

 Texas courts may exercise personal jurisdiction over a nonresident defendant only
if it is authorized by the Texas long-arm statute and it comports with constitutional guarantees of due
process. Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990). The Texas long-arm statute
reaches as far as the federal Constitution permits and, therefore, our due process analysis under state
law is consistent with the federal test. Guardian Royal Exch. Assurance, Ltd. v. English China
Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991). To subject a nonresident defendant to personal
jurisdiction in Texas, the following three requirements must be met: (1) the defendant must
purposefully do some act or consummate some transaction in Texas, thus establishing minimum
contacts with the forum; (2) the cause of action must arise from or be connected with that act or
transaction, so as to support specific jurisdiction, or the contacts with Texas must be so continuing
and systematic as to support general jurisdiction; and (3) the exercise of jurisdiction by Texas courts
must not offend traditional notions of fair play and substantial justice. Schlobohm, 784 S.W.2d at
358. 

 In 1980, the Supreme Court held that a state may exercise personal jurisdiction over
a nonresident defendant that "delivers its products into the stream of commerce with the expectation
that they will be purchased by consumers in the forum State." World-Wide Volkswagen Corp. v.
Woodson, 444 U.S. 286, 297-98 (1980). However, it is not enough that it be merely foreseeable that
the defendant corporation's products might find their way into the forum state. Id. at 297. In 1987,
the Supreme Court split on the issue, with Justice O'Connor writing a plurality opinion arguing that
"a defendant's awareness that the stream of commerce may or will sweep the product into the forum
State does not convert the mere act of placing the product into the stream into an act purposefully
directed toward the forum State." Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102,
112 (1987) (plurality opinion). Under Justice O'Connor's opinion, the nonresident defendant must
take some action that would "indicate an intent or purpose to serve the market in the forum State"
and must purposefully direct some action toward the forum. Id. In CMMC v. Salinas, the Texas
Supreme Court declined to "take sides in the Asahi debate," but observed that Texas cases "suggest[]
that we would follow Justice O'Connor's formulation of the stream-of-commerce rule in Texas." 
929 S.W.2d 435, 439-40 (Tex. 1996); see Michiana Easy Livin' Country, Inc. v. Holten, No. 04-0016, 2005 Tex. LEXIS 420, at *19-20 (May 27, 2005) (citing CMMC, 929 S.W.2d at 440) ("we
have noted that our cases appear to follow the 'additional conduct' standard" proposed by Justice
O'Connor's plurality in Asahi); see also Daimler-Benz Aktiengesellschaft v. Olson, 21 S.W.3d 707,
723-24 (Tex. App.--Austin 2000, pet. dism'd w.o.j.) (nonresident corporation subject to jurisdiction
due to distribution agreement that "directly align[ed] [Texas distribution company's] interests with
[foreign company's] interest in maximizing the sales of its vehicles in the U.S.").


Discussion

 Rocal argues that Texas courts may properly exercise specific jurisdiction over Kiwa
Chemical under the "stream of commerce" doctrine and that subjecting Kiwa to jurisdiction in Texas
would not offend traditional notions of fair play and substantial justice. 

 Kiwa is a Japanese company with no offices or representatives located in Texas. 
Kiwa's contacts with Avery were conducted through Avery's offices in Illinois. In 1999, Kiwa
contracted with Avery to allow Avery "the exclusive right to market and distribute a certain brand
of reflective sheeting in the United States" by repackaging it and selling it as an Avery product. 
Kiwa entered into other distribution agreements for the marketing of different Kiwa products in
North America by companies other than Avery. There is no evidence that Kiwa representatives
contacted persons or offices located in Texas or made direct contact of any kind with Texas. 
However, various email communications between Kiwa and Avery establish that Kiwa was aware
that its sheeting material was being marketed by Avery for road construction projects throughout the
United States, including projects in Texas. In April 2000, Kiwa inquired about "any development
or progress on the Texas bids," and in June 2000, Kiwa "learned from [an Avery employee] that
Avery was awarded the bids for the States of Texas and Missouri and the business will start in July." (1)

 Kiwa's mere awareness that Avery hoped to win bids that would involve using the
Kiwa product in Texas is not enough to satisfy due process, however; instead, Kiwa must have acted
in some way so as to "purposefully avail[] itself of the privilege of" doing business in Texas. 
Michiana Easy Livin' Country, 2005 Tex. LEXIS 420, at *14 (quoting Hanson v. Denckla, 357 U.S.
235, 253 (1958)). In making this determination, we review Kiwa's contacts with Texas and ask
whether they were purposeful and whether Kiwa benefitted from its availment of Texas's
jurisdiction. See id. at *15-16. (2) In other words, Kiwa must have reached into Texas and created
continuing relationships and obligations with Texas citizens, and it must have done more than simply
anticipated financial benefits through a "collateral relation" to Texas. (3) See id. at *15, 25. We will
not hale Kiwa into court in Texas due to Avery's unilateral activity. See id. at *14.

 Assuredly, Kiwa was aware that its product would enter Texas through the stream of
commerce. Communications between Kiwa and Avery specifically mentioned Texas contracts
several times. However, those few references consist largely of information provided by Avery,
updating Kiwa on projects in several states on which Avery had submitted bids, and amount to
approximately twelve pages in a record of nearly 2000 pages of communications between the two
companies. Kiwa has no offices, property, or employees in Texas and there is no evidence that Kiwa
representatives have ever traveled to Texas or entered into any contracts in Texas. Kiwa itself did
not contact anyone in Texas. Kiwa knew that its product would be used in Texas, but that alone does
not amount to purposeful availment of the privilege of doing business in Texas. The fact that Avery
hoped to use the sheeting in Texas did not affect its contract with Kiwa: "it is hard to imagine what
possible benefits and protection" Kiwa gained from Texas law or how these nonresident parties
"would have conducted [their] activities any differently if Texas had no law at all" or if the projects
in question had been in another state. Id. at *24-25. Financial benefits accruing to Kiwa from its
"collateral relation" to Texas and not arising "from a constitutionally cognizable contact" with Texas
do not support the exercise of jurisdiction. Id. at *25. When we examine the quality of Kiwa's few
contacts with Texas, see American Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 810
(Tex. 2002), Kiwa's relationship with Texas is too remote or attenuated for it to have reasonably
expected to be haled into court here. See Woodson, 444 U.S. at 297. We hold that the trial court's
determination that Kiwa, although aware that its product would enter Texas, did not perform
"additional conduct" that would subject it to personal jurisdiction in Texas, see Michiana Easy Livin'
Country, 2005 Tex. LEXIS, at *19, is not so against the great weight and preponderance of the
evidence as to be manifestly erroneous or unjust. See Estate of King, 244 S.W.2d at 661. We affirm
the trial court's granting of Kiwa's special appearance. 



 __________________________________________

 David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: July 7, 2005
1. The record contains about ten other communications sent between April 2000 and
September 2002 referring to bids in Texas.
2. Compare CSR Ltd. v. Link, 925 S.W.2d 591, 595-96 (Tex. 1996) (CSR sold product that
was shipped directly to Houston; however, title passed in Australia and CSR did not participate in
decision to ship to Texas, did not have offices, employees, bank accounts or property, pay taxes, or
contract in Texas), with Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 201 (Tex. 1985)
(Kawasaki knew product would enter Texas, prepared inspection certificates showing Texas buyer,
and maintained office in Texas that provided marketing and after-sale customer service). 
3. Appellants do not assert that jurisdiction is proper because Kiwa committed some kind of
tort in Texas. See Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2) (West 1997).