**J.B. "Barry" MARTEN and Sonic Motors, Inc., Appellants**

v.

**Phil SILVA, Appellee.**

**No. 05–05–01470–CV.**

Court of Appeals of Texas, Dallas.

Aug. 17, 2006.

298

Carl A. Generes, Dallas, for appellants.

Mark H. How, Short, How & Frels P.C., Dallas, for appellee.

Before Justices MORRIS, BRIDGES, and RICHTER.

## OPINION

Opinion by Justice BRIDGES.

J.B. "Barry" Marten and Sonic Motors, Inc., appeal the trial court's denial of their special appearances. In two issues, Marten and Sonic argue there is no personal jurisdiction over them, and the trial court improperly considered evidence Phil Silva offered to oppose their special appearances. We affirm the trial court's order denying Marten's and Sonic's special appearances.

In March 2005, Marten, who is Sonic's sole officer and director, contacted Silva, a Collin County resident, by telephone. Marten represented that he had the right to sell a 1970 Pontiac GTO convertible "Judge" model. Silva is a collector of automobiles known as American "muscle cars," and the GTO was of special interest to him. Marten offered to sell the GTO to Silva for $185,000. Marten emailed photographs of the GTO to Silva, and Silva agreed to purchase the GTO, provided that the GTO was in fact the represented vehicle and that the serial number was correct. Marten faxed Silva documents showing the serial number of the GTO and its options, including a rare "Ram Air IV" option. Regarding the closing of the deal, Marten contacted Silva numerous times in Texas by telephone. Silva told Marten to bring the GTO to a facility in Holly, Michigan, where Silva would bring cashier's checks and take possession of the GTO. However, on March 28, 2005, Marten called Silva to tell him that the GTO was no longer for sale. Thereafter, Silva sued Marten and Sonic for breach of contract, specific performance, misrepresentation, and DTPA violations. Marten and Sonic filed special appearances, which the trial court denied. This appeal followed.

 In their first issue, Marten and Sonic argue the trial court erred in denying their special appearances. Specifically, Marten and Sonic challenge whether the evidence showed sufficient minimum contacts between them and Texas to support the exercise of personal jurisdiction and whether standards of fair play and substantial justice prevent Texas from exercising jurisdiction. The plaintiff has the initial burden of pleading facts sufficient to bring a nonresident defendant within the provisions of the Texas long arm statute. *See Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 633 (Tex.App.-Dallas 1993, writ denied). When a nonresident defendant challenges a trial court's exer-

cise of personal jurisdiction through a special appearance, it carries the burden of negating all bases of personal jurisdiction. *See Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985). The exercise of personal jurisdiction requires the trial judge to resolve any factual disputes before applying the jurisdictional formula. *Hotel Partners v. Craig,* 993 S.W.2d 116, 120 (Tex.App.-Dallas 1994, writ denied). When, as here, a trial judge fails to make findings of fact and conclusions of law, we view the trial court's judgment as impliedly finding all the necessary facts to support its judgment. *See Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990).

■ On appeal, we apply a factual sufficiency of the evidence review to the trial judge's determination of disputed fact issues on the question of jurisdiction. *Craig,* 993 S.W.2d at 120; *KPMG Peat Marwick,* 847 S.W.2d at 632. Once we have determined the evidence is factually sufficient to support the trial judge's resolution of disputed fact issues, we examine *de novo* whether the facts negate all bases for personal jurisdiction. *See Craig,* 993 S.W.2d at 120.

■ The Texas long-arm statute authorizes the exercise of jurisdiction over nonresidents "doing business" in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). Although the statute lists particular acts which constitute "doing business," the statute also provides that the nonresident's other acts may satisfy the "doing business" requirement. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997); *see Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). Because the Texas long-arm statute "reach[es] as far as the federal constitution permits," *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990); *U–Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.

1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978), we focus on the federal constitutional requirements for the exercise of personal jurisdiction. *See Guardian Royal,* 815 S.W.2d at 226. Under federal due process requirements, we determine: (1) whether the nonresident defendant has purposefully established "minimum contacts" with the forum state; and (2) if so, whether the exercise of jurisdiction comports with "fair play and substantial justice." *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Guardian Royal,* 815 S.W.2d at 226.

■ Minimum contacts may be established only on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. 2174 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). The actions of the nonresident defendant must justify a conclusion that the nonresident defendant should reasonably anticipate being called into court in the forum state. *See Temperature Sys., Inc. v. Bill Pepper, Inc.,* 854 S.W.2d 669, 675 (Tex. App.-Dallas 1993, writ dism'd by agr.). The acts relied on must be "purposeful" rather than fortuitous. *Michiana Easy Livin' Country v. Holten,* 168 S.W.3d 777, 785 (Tex.2005) (dismissing claims against Michiana where Michiana's only contact with Texas was Holten's decision to place his order from Texas; "Holten called Michiana in Indiana, sent payment to Indiana, paid for delivery from Indiana, and agreed to resolve every dispute in Indiana.").

■ It is only the defendant's contacts with the forum that count: purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely

as a result of . . . 'the unilateral activity of another party or a third party.'" *Id.* (citing *Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. 2174). Sellers who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to the jurisdiction of the latter in suits based on their activities. *Michiana,* 168 S.W.3d at 785 (citing *Burger King Corp.,* 471 U.S. at 473, 105 S.Ct. 2174). A defendant must seek some benefit, advantage, or profit by "availing" itself of the "jurisdiction." *Michiana,* 168 S.W.3d at 785.

■■■■■ Personal jurisdiction may be either general or specific. *KPMG Peat Marwick,* 847 S.W.2d at 632; *see Schlobohm,* 784 S.W.2d at 357. Under specific jurisdiction, the cause of action must arise out of or relate to the nonresident defendant's contact with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Guardian Royal,* 815 S.W.2d at 227. With this standard in mind, we now examine whether Marten and Sonic purposefully established "minimum contacts" with Texas; *i.e.,* whether there was a substantial connection between Marten and Sonic and Texas arising from action or conduct of Marten and Sonic purposefully directed toward Texas.

Here, Marten argues in his brief that "there is not a single allegation, nor a single piece of evidence, regarding the telephone or facsimile number(s) used, or of any mention in the parties' purported communications suggesting that Silva was not in Michigan." However, the record shows Marten, Sonic's sole officer and director, initiated contact with Silva, a Texas resident, in Texas. Marten offered to sell Silva a rare automobile for $185,000. Silva agreed to purchase the automobile for the asking price, provided Marten demonstrated proof that the automobile was as advertised. Marten faxed and emailed photographs and documentation showing the automobile was as represented. Marten and Silva made arrangements for Silva to bring cashier's checks to Michigan and pick up the automobile. Nevertheless, Marten subsequently called Silva to say the automobile was no longer for sale. Under these facts and circumstances, we conclude Marten's actions, as sole officer and director of Sonic, constituted "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. 2174; *Michiana,* 168 S.W.3d at 785. Thus, we conclude Marten and Sonic purposefully established "minimum contacts" with Texas. *See Burger King Corp.,* 471 U.S. at 473-75, 105 S.Ct. 2174; *Michiana,* 168 S.W.3d at 785.

■■■■■ Having concluded Marten and Sonic have the necessary minimum contacts with Texas, we must now determine whether the exercise of jurisdiction comports with "fair play and substantial justice." *See Guardian Royal,* 815 S.W.2d at 231. In making this determination, we examine whether Marten and Sonic presented a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See Burger King Corp.,* 471 U.S. at 477, 105 S.Ct. 2174. Under this inquiry, we consider the following factors: (1) the burden on the nonresident defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See World–Wide Volkswagen Corp. v. Woodson,* 444

U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Guardian Royal*, 815 S.W.2d at 231. Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Guardian Royal*, 815 S.W.2d at 231; *see Burger King Corp.*, 471 U.S. at 477, 105 S.Ct. 2174.

After careful review of these factors, we conclude there is nothing in the record to indicate that litigation in Texas would be excessively burdensome to Marten and Sonic. The interests of Texas in adjudicating the dispute and Silva's interest in obtaining convenient and effective relief clearly weigh in favor of the exercise of jurisdiction. Under the facts and circumstances of this case, we conclude Marten and Sonic purposefully established minimum contacts with Texas and the exercise of jurisdiction comports with fair play and substantial justice. *See Guardian Royal*, 815 S.W.2d at 231; *Burger King Corp.*, 471 U.S. at 476–78, 105 S.Ct. 2174. Consequently, the trial judge was correct in denying Marten's and Sonic's special appearances. We overrule Marten and Sonic's first issue.

In their second issue, Marten and Sonic argue the trial court improperly considered evidence submitted as exhibits to Silva's affidavit in support of his response to Marten and Sonic's special appearances. Specifically, Marten and Sonic raised a hearsay objection to a document created by Pontiac showing the GTO's serial number and a note from Marten to Silva stating the GTO was "no longer for sale." Whether to admit or exclude evidence is a matter committed to the trial court's sound discretion. *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001). Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex.R. Evid. 801(d). Here, neither the document showing the GTO's serial number nor the note from Marten was offered to prove the truth of the matters asserted therein. Instead, the documents merely evidence an ongoing series of communications and faxes between Marten and Silva concerning Silva's purchase of the GTO. Under these circumstances, we conclude the documents were not hearsay, and the trial court did not abuse its discretion in admitting the documents as exhibits to Silva's affidavit. *See* Tex.R. Evid. 801(d); *Bristol*, 65 S.W.3d at 647. We overrule Marten's and Sonic's second issue.

We affirm the trial court's order denying Marten's and Sonic's special appearances.