**Opinion issued June 15, 2023**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

## NO. 01-22-00030-CV

———————————

## EUROTAINER US, INC., Appellant

## V.

## RICHARD GOLDSTEIN, Appellee

---

### On Appeal from the 55th Civil District Court
### Harris County, Texas
### Trial Court Case No. 2019-89457

---

## MEMORANDUM OPINION

Eurotainer US, Inc., a Texas-based company, filed this interlocutory appeal

from the trial court's order granting Richard Goldstein's special appearance.[1]

Eurotainer contends Goldstein's contacts with Texas give the trial court general and

---

[1]  *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7).

specific jurisdiction over him. Because we agree the requirements for specific jurisdiction are met, we reverse.

## Background

Eurotainer is in the business of leasing tanks for the transport and storage of liquids and gases. It employed Alvin Kibbe in 2019 when it acquired Taylor Minster Leasing USA, Inc. (TML USA). Eurotainer sued Kibbe for breach of contract, breach of duty of loyalty and confidential relationship, fraud, misappropriation of trade secrets, tortious interference, unfair competition, conspiracy, and attorney's fees. Eurotainer later joined Goldstein, a resident of the United Kingdom, as a co-defendant and alleged claims against him for (1) misappropriation of trade secrets; (2) tortious interference with contractual and business relations; (3) unfair competition; and (4) civil conspiracy.

Eurotainer alleges that Goldstein is a principal and agent of Eurotainer's competitor, 4-Iron 2020 Limited, formerly known as Goldfleet Management Limited (GML). It also alleges that Goldstein exclusively consults for another competitor, Socomat S.A., a French company. Eurotainer alleges that, while Kibbe worked for Eurotainer, Goldstein—on behalf of GML and Socomat—(1) communicated with Kibbe to appropriate Eurotainer's confidential information and trade secrets and obtain referrals of business opportunities to GML and Socomat that belonged to

2

Eurotainer; (2) engaged in unfair competition practices; and (3) recruited Kibbe to work in Texas as part of Socomat's U.S.-based company.

Goldstein filed a special appearance, which the trial court granted.

**Standard of Review**

Whether a court has personal jurisdiction over a defendant is a question of law that we review de novo. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789 (Tex. 2002). But in resolving the jurisdiction question, a trial court often must resolve questions of fact. *BMC Software Belgium*, 83 S.W.3d at 794. When, as here, the trial court does not issue findings of fact and conclusions of law related to its decision on a special appearance, we imply all relevant facts necessary to support the judgment that are supported by evidence. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). We presume the trial court resolved all factual disputes in favor of its judgment. *BMC Software Belgium*, 83 S.W.3d at 795. When the appellate record includes the reporter's and clerk's records, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id.*

We apply the same standards we use to review jury findings. *PetroSaudi Oil Servs. Ltd. v. Hartley*, 617 S.W.3d 116, 132 (Tex. App.—Houston [1st Dist.] 2020, no pet.). In a legal sufficiency review, we must credit favorable evidence if a

3

reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). After considering and weighing all the evidence, we set aside the factfinding only if it is so contrary to the overwhelming weight of the evidence to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

## Applicable Law

Texas courts may assert personal jurisdiction over a nonresident defendant if the Texas long-arm statute authorizes jurisdiction and exercising jurisdiction complies with federal and state due process standards. *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). The Texas long-arm statute reaches "as far as the federal constitutional requirements of due process will allow." *Id.*

Under the Due Process Clause of the United States Constitution's Fourteenth Amendment, jurisdiction is proper if a nonresident defendant established "minimum contacts" with Texas and maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1940). The purpose of the minimum-contacts analysis is to protect the defendant

from being hauled into court when its relationship with the forum is too attenuated to support jurisdiction. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). Accordingly, we focus upon the defendant's activities and expectations in deciding whether it is proper to call the defendant before a Texas court. *Id.*

The minimum-contacts analysis requires that a defendant "purposefully avail" itself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of our laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985). The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). It is the quality and nature of the defendant's contacts, rather than their number, that is important to the minimum-contacts analysis. *See Guardian Royal,* 815 S.W.2d at 230 n.11. We consider three factors in determining whether a defendant purposefully availed itself of the privilege of conducting activities in Texas:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. . . . Finally, the defendant must seek some benefit, advantage[,] or profit by availing itself of the jurisdiction.

*Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013) (quoting *Retamco Operating*, 278 S.W.3d at 338–39).

5

A defendant's contacts with a forum can give rise to either specific or general jurisdiction. For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the defendant's contacts with the forum must be purposeful, and (2) the cause of action must arise from or relate to those contacts. *See Guardian Royal,* 815 S.W.2d at 227. Specific jurisdiction does not, however, "always require[] proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct" as "some relationships will support jurisdiction without a causal showing." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). Thus, when analyzing specific jurisdiction, we focus on the relationship between the forum, the defendant, and the litigation. *Moncrief Oil*, 414 S.W.3d at 150; *see also Ford Motor*, 141 S. Ct. at 1024 ("[T]he Court has long focused on the nature and extent of 'defendant's relationship to the forum State.'" (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cty.*, 582 U.S. 255, 262 (2017)).

"[S]pecific jurisdiction requires us to analyze jurisdictional contacts on a claim-by-claim basis." *Moncrief Oil*, 414 S.W.3d at 150 (citing *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 660 (Tex. 2010)). A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim. *Id.* This is because of the distinction between general jurisdiction and specific jurisdiction. *Id.* "If a defendant does not

have enough contacts to justify the exercise of general jurisdiction, the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts." *Id.* (internal quotation and citation omitted). A court need not address contacts on a claim-by-claim basis if all claims arise from the same forum contacts. *Id.* at 150–51. But when claims arise from different forum contacts, we analyze each claim separately. *See id.* (analyzing tortious interference and trade secrets claims separately because they "arise from separate jurisdictional contacts").

In contrast, general jurisdiction allows a forum to exercise jurisdiction over a defendant even if the cause of action did not arise from or relate to a defendant's contacts with the forum. *Guardian Royal*, 815 S.W.2d at 228. General jurisdiction is present when a defendant's contacts with a forum are "continuous and systematic," a more demanding minimum-contacts analysis than specific jurisdiction. *Id.*

In a personal jurisdiction challenge, the plaintiff and defendant have shifting burdens. *Kelly*, 301 S.W.3d at 658. The plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the long-arm statute. *McKanna v. Edgar,* 388 S.W.2d 927, 930 (Tex. 1965). But upon filing a special appearance, the nonresident defendant assumes the burden to negate all the

7

bases of personal jurisdiction alleged by the plaintiff. *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex. 1985).

## 1. Initial Pleadings

Goldstein contends that Eurotainer did not meet its initial burden to plead allegations sufficient to bring him within the reach of the Texas long-arm statute. *See* TEX CIV. PRAC. & REM. CODE § 17.042; *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002).

Eurotainer carried the initial burden to plead that Goldstein conducted business in Texas. *See Kelly*, 301 S.W.3d at 658. In its petition, Eurotainer alleges that "Goldstein knowingly committed tortious activity against Eurotainer in the State of Texas" by repeatedly purposefully availing himself of the privileges of doing business here. Thus, Eurotainer satisfied its initial pleading requirement. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (courts liberally construe pleadings in favor of pleader when determining whether sufficient facts alleged to confer jurisdiction); *Huynh v. Nguyen*, 180 S.W.3d 608, 619 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (minimal pleading requirement satisfied by allegation that nonresident defendant is doing business in Texas).

## 2. Specific Jurisdiction

In support of its claims against Goldstein, Eurotainer alleges that Goldstein communicated with Kibbe while Kibbe was employed by Eurotainer; received

confidential information and trade secrets from Kibbe; accepted Kibbe's referrals of business opportunities; and worked with Kibbe to divert business toward GML or Socomat. *See* TEX. CIV. PRAC. & REM. CODE § 17.042. Goldstein responds that any contacts with Texas were not purposeful and do not give rise to the causes of action. We disagree.

## A.    Analysis

For the trial court to exercise specific jurisdiction over Goldstein, Goldstein's contacts with Texas must be purposeful and the cause of action must arise from or relate to those contacts. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575–76 (Tex. 2007); *Ford Motor*, 141 S. Ct. at 1025. All of Eurotainer's claims against Goldstein arise from or relate to the same forum contacts, so we analyze the claims together. *See Moncrief Oil*, 414 S.W.3d at 150–51.

Eurotainer alleges that Goldstein directly committed wrongdoing on Socomat's behalf, helped commit wrongdoing on Socomat's behalf, or conspired with Socomat to commit wrongdoing in Texas. So the burden shifted to Goldstein to negate all bases of personal jurisdiction alleged by Eurotainer. *Kelly*, 301 S.W.3d at 658. Because the trial court did not issue findings of fact or conclusions of law, we construe Eurotainer's argument that Texas has specific jurisdiction over Goldstein as an attack on the legal and factual sufficiency of the evidence to support the trial court's implied findings. *See Huynh*, 180 S.W.3d at 620.

Eurotainer alleges that the claims arise from Goldstein's communications with Kibbe, who was in Texas. *See Schlobohm*, 784 S.W.2d at 357 ("Where the activities of a defendant in a forum are isolated or disjointed . . . jurisdiction is proper if the cause of action arises from a particular activity."). Goldstein allegedly communicated with a Texas employee of a Texas-based company to acquire existing clients of that company, soliciting information acquired in Texas to help Socomat establish itself in Texas. *Moncrief Oil*, 414 S.W.3d at 153 (defendant's contacts were purposeful and substantial when its activity sought to get business in forum state). Goldstein is also alleged to have offered Kibbe a commission for brokering sales of GML's storage tanks located in Texas, worked with Kibbe to divert Eurotainer business to Socomat, and asked Kibbe to broker deals to transport GML's tanks from Texas to Florida. *See Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1189–90 (5th Cir. 1984) (basing jurisdiction on acts that sought to obtain business in Texas); *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 333–34 (5th Cir. 1982) (basing jurisdiction on defamatory phone call to district attorney attempting to wrest business from resident); *see also Bell,* 549 S.W.3d at 564 (recognizing that transfer of "Texas-based assets to an out-of-state defendant" can confer personal jurisdiction because such transfers "derive profit from Texas and create continuing connection[s] with the state").

Goldstein asserts that Kibbe contacted him about Eurotainer clients who were "unacceptable" to Eurotainer, that he did not compensate Kibbe for any resulting business, that he did not request Kibbe to redirect business from Eurotainer to another company, that none of Kibbe's leads were Texas-based clients, and that the only client that resulted in business was a Bahamas-based company. Goldstein denies discussing recruiting Kibbe or the creation of a U.S.-based subsidiary called Socomat, Inc. But Goldstein emailed Kibbe, while Kibbe worked at Eurotainer, informing him that he would "shortly hear from [Socomat's CEO]" and that "[w]e would like to explore ways in which you [could] join [Socomat's Technical Director] and myself at Socomat." And Goldstein admits that he communicated with Kibbe about paying him a commission for the sale of storage tanks located in Texas while Kibbe was working for Eurotainer. Goldstein also sent an email in September 2019 identifying a client that Socomat could take from Eurotainer by undercutting Eurotainer's offer and indicating that Kibbe had worked on this client "for the last [2 to 3] weeks."

The record shows that Goldstein contacted Kibbe to procure, direct, and establish business in Texas. Goldstein testified that he worked solely as a consultant to Socomat, had informed Kibbe that he would obtain a commission for brokering the sale of GML's storage tanks in Houston, and discussed diverting business away from Eurotainer. We therefore determine that the evidence does not support any

implied findings by the trial court in support of granting Goldstein's special appearance based on specific jurisdiction. *See City of Keller*, 168 S.W.3d at 819. Goldstein's contacts via communications, negotiation, and solicitation establish his purposeful availment of the privilege of conducting activities in Texas. *See Ford Motor*, 141 S. Ct. at 1026 (requiring that the suit arise out of relate to the defendant's contacts with the forum); *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011) (asking whether there is "an affiliation between the forum and the underlying controversy," without demanding that the inquiry focus on cause).

Besides minimum contacts, due process requires that the exercise of personal jurisdiction comply with traditional notions of fair play and substantial justice. *Retamco*, 278 S.W.3d at 338. If a nonresident defendant has minimum contacts with the forum, rarely will the exercise of jurisdiction over that defendant not satisfy traditional notions of fair play and substantial justice. *Id.* at 341. We undertake this evaluation considering these factors: (1) the burden on the defendant; (2) the forum's interests in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations in furthering fundamental substantive social policies. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 878 (Tex. 2010).

Asserting personal jurisdiction over Goldstein would not offend traditional notions of fair play and substantial justice. Subjecting Goldstein to suit in Texas imposes a burden on him, but the same is true for all nonresident defendants. Distance alone ordinarily cannot defeat jurisdiction. *Id*. at 879 ("Nor is distance alone ordinarily sufficient to defeat jurisdiction: modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." (internal quotation omitted)). Although Goldstein may be burdened by having to litigate in Texas, that burden would occur no matter where Eurotainer sued him. *See Hartley*, 617 S.W.3d at 142 (noting burden on defendant of litigating in Texas would exist no matter where plaintiff sued). Given that Goldstein traveled to Texas as part of his consulting business, the burden of litigating here is not severe enough to defeat jurisdiction. *See Moncrief*, 414 S.W.3d at 155.

Additionally, because Eurotainer's claims against Kibbe will be litigated in Texas, it promotes judicial economy to litigate the claims against Goldstein in the same court. *Spir Star AG*, 310 S.W.3d at 879 ("[B]ecause the claims against [the resident defendant] will be heard in Texas, it would be more efficient to adjudicate the entire case in the same place."). On balance, the burden on Goldstein of litigating in a foreign jurisdiction is minimal and outweighed by Texas's interests in adjudicating the dispute. *Id.* at 879–80.

We therefore hold that the trial court erred in granting Goldstein's special appearance. Consequently, we need not reach appellants' remaining issues. TEX. R. APP. P. 47.1.

## Conclusion

We reverse the trial court's order and remand the case for proceedings consistent with this opinion.


Sarah Beth Landau
Justice

Panel consists of Justices Kelly, Landau, and Farris.

14